286 P.2d 195

Oscar KELSEY, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, and B. F. Hill, F. A. Nathan and A. R. Kleindienst, members thereof; and Minard-Kennison Realty and Construction Company, Inc., Respondents.

No. 6045.

Supreme Court of Arizona.

July 12, 1955.

H. S. McCluskey, Phoenix, for petitioner.

John R. Franks, Phoenix, Donald J. Morgan, Robert K. Park, Phoenix, and John F. Mills, Prescott, of counsel, for respondent Industrial Commission.

UDALL, Justice.

Petitioner, Oscar Kelsey (a man 53 years of age), while in the employ of Minard-Kennison Realty and Construction Co., Inc., was injured by an accident admittedly arising out of and in the course of his employment, which it was later found resulted in a permanent partial disability. The Commission assumed jurisdiction and by an order dated August 18, 1952, found the claim to be compensable. The petitioner being wholly dissatisfied with the awards thereafter made has by certiorari attempted to bring the whole matter before us for review. Respondent, the Industrial Commission of Arizona, appears as the insurance carrier. There was no appearance by the employer.

Petitioner, following his trade as a carpenter, went to work for the above-named employer on July 21, 1952. The next morning he was assigned to work on a roof where he was engaged in receiving sheeting lumber being handed up from below when he "slipped on sawdust on roof and fell to ground, landing on both heels". The fall was from a height of about eight feet. He was immediately hospitalized and X-rays showed bilateral fractures of the *os calcis* (calcaneus or heel bone) of both feet. After a two and one-half month stay in the hospital he was discharged therefrom on October 7, 1952, but still remained under doctor's care. Later, in March 1953, petitioner was re-hospitalized for a few days where a urinary disorder—claimed to have been caused by the original fall—was investigated fully. At all times the petitioner has had the best of medical care (he was treated or examined by at least a half dozen doctors during this two and one-half year period) and has received the accident benefits prescribed by law.

Rarely in a workmen's compensation case have we been confronted with such a voluminous record as is here presented. After petitioner employed counsel on March 5, 1953, procedurally speaking a legal marathon ensued. In all, a half dozen or more petitions for hearing or rehearing were filed; five formal hearings were held, the reporter's transcript thereof comprising some 427 pages; 91 documents, in addition to exhibits and transcripts, were certified over to us; and some six formal findings and awards were made. It would only create confusion and leave the reader in a haze for us to recite the various steps taken

or attempt to summarize the evidence adduced.

As to wage scale the Commission in the first instance determined that petitioner's earning capacity during the year preceding the accident (he had worked only one full day for this employer) averaged $145.80 monthly and for a time he was erroneously compensated for temporary total disability upon this basis. Thereafter the Commission, following the method approved in the case of Steward v. Industrial Comm., 69 Ariz. 159, 211 P.2d 217, used the average wage pattern of three other carpenters employed by this employer—as is provided for by section 56-952, A.C.A.1939—to determine that petitioner's average monthly wage was $397.76. The total temporary and partial temporary disability compensation was adjusted accordingly for the period July 23, 1952, to July 30, 1953. This aggregated the sum of $3,208.19, all of which has been paid. The same wage base was used in making the final award; however, petitioner stoutly maintains his monthly wage scale should have been fixed at $435.60.

A medical consulting board consisting of Doctors L. L. Stolfa, R. S. Haines, Joseph Bank and James R. Moore, on April 24, 1953, made a unanimous report to the Commission that in their opinion the petitioner's condition had become stationary and that he had sustained a 15% permanent physical functional disability. Furthermore they stated:

"His upper extremities function normally. His back is flexible, having an excellent range of motion. There is no back deformity present. * * *

* * * * * *

"From a very careful review of this case and the consideration of the history, all of the information contained in the various reports on file, and the findings on examination we are of the opinion that the urinary condition described is not a result of any injury sustained in the accident in question. Furthermore, we are of the opinion that the spells of dizziness, weakness and fainting which he described are not attributable to the accident in question."

The Commission by its award dated May 20, 1953, in effect adopted as a part of its findings the doctors' consultation report covering all of the above matters. In fairness it should be stated there was a slight conflict in the evidence on these matters. Petition for rehearing was filed and on December 18, 1953, the Commission reaffirmed its order of May 20, 1953.

█ Petitioner contends that these findings of the Commission relating to his average monthly wage, the stationary condition of his disability, and the lack of causal connection between the accident and

the claimed kidney disorder are erroneous. As stated, all these matters are encompassed within the findings and award reaffirmed on December 18, 1953. A petition for rehearing of this award was filed and subsequently withdrawn, and no appeal by certiorari was prosecuted to this court therefrom, as is provided by section 56–972, A.C.A.1939, although this was specified in the award as being petitioner's remedy. Under these circumstances this award has become final, and the findings of the Commission on these matters are *res judicata* and binding on petitioner and the Commission alike. Ellison v. Industrial Commission, 75 Ariz. 374, 257 P.2d 391; Beutler v. Industrial Commission, 67 Ariz. 72, 190 P.2d 918; Stephens v. Miami Copper Co., 59 Ariz. 528, 130 P.2d 507.

█ The principal assignments of error go to the Commission's determination of petitioner's loss of earning capacity. When it made the second award dated May 20, 1953, the Commission recognized that there was then no competent evidence before it on which to base findings for loss of future earnings, hence it directed the petitioner to seek light work for a short period and deferred making a permanent award until later. Petitioner thereafter made periodic reports as to his earnings and by a fourth award dated April 6, 1954, the Commission found:

"11. That applicant's work record since his condition became stationary does not truly represent his ability to earn and is not indicative of his true loss of earning capacity."

Other hearings were held and at one of them the petitioner, when questioned concerning the type of work he could do, stated that he was a handy man and he thought he was physically able to perform "maintenance work" or other similar labor which did not require too strenuous physical exertion, or standing on his feet for prolonged periods of time. The Commission, in order to establish petitioner's earning capacity, held a hearing at which the managers of three office buildings in Phoenix were called to testify as to wages paid their "maintenance men". These wages were averaged out and the Commission in its fifth award found that petitioner had "sustained a 32.35% loss of earning capacity, in that he is now able to earn the sum of $269.08 per month." Using this factor and the average monthly wage of $397.76 theretofore established it was determined that he was entitled to an award for an unscheduled permanent partial disability in the sum of $70.77 per month. The award recites that the Commission gave due consideration to all the factors enumerated in section 56–957, A.C.A.1939, as construed in the cases of Hoffman v. Brophy, 61 Ariz. 307, 149 P.2d 160; Eagle Indemnity Co. v. Hadley, 70 Ariz. 179, 218 P.2d 488; Schnatzmeyer v. Industrial Commission, 77 Ariz. 266, 270 P.2d 794, 795. It appears from the record that this finding of the

Commission is supported by competent evidence, and under well-recognized principles will not be disturbed by this court on appeal.

Petitioner further contends that because he is unable to find regular employment he was then and is now permanently and totally disabled within the meaning of the law. This proposition permeates the entire record. In the Schnatzmeyer case, supra, this same contention was made. We there said:

"Clearly, from the evidence, petitioner is incapacitated from following his former line of work as a carpenter but is capable of performing light work if the same were available. Consequently, *if compensation is to be allowed on a basis of inability to secure employment he is capable of performing, the Commission must find as a fact that his failure to find work is caused by his injuries.* * * * The cause of unemployment is necessarily an inference to be drawn from all the facts and circumstances bearing on that issue * * *." (Emphasis supplied.)

 In the instant case, we are unable to say from the record before us that the Commission was legally required to infer that petitioner's inability to secure employment was caused by his physical disability resulting from the accident. As we stated in the case of Davidson v. Industrial Commission, 72 Ariz. 314, 235 P.2d 1007, 1009:

"The mere showing that a claimant has not returned to work is not proof of the fact that he cannot work because of a physical disability arising out of an industrial accident."

We hold the Commission did not err in refusing to make an award to petitioner based upon a permanent total disability.

 Petitioner claims the Commission erred in not permitting him to testify as to what medical advice was orally given him at Mayo Clinic concerning his condition. It is well settled that the Commission, under section 56–973, A.C.A.1939, has wide latitude in the admission of evidence, including hearsay. Young v. Hodgman & Mac Vicar, 42 Ariz. 370, 26 P.2d 355; Ocean A. & G. Corp. v. Industrial Comm., 34 Ariz. 175, 269 P. 77. However, in the case of Gomez v. Industrial Comm., 72 Ariz. 265, 233 P.2d 827, 828, we stated:

" * * * The commission must * * provide *proper safeguards* for the purpose of ascertaining the substantial rights of the parties and carrying out the spirit of the Act, *in the admission of testimony, including hearsay.*" (Emphasis supplied.)

We are of the opinion that the Commission in the instant case properly excluded the

proffered testimony. It accepted letters and a report of the Mayo Clinic roentologist on the matter. Petitioner's testimony was self-serving hearsay of little probative value, and could not possibly have been rebutted. There were no proper safeguards supporting its validity, and there was, therefore, no error in refusing it.

■ Finally it is contended the Commission erred in failing, in the final award, to fix an attorneys' fee in accordance with Laws '53, ch. 112, sec. 1 (now appearing as section 56–972a, 1954 Cum.Supp. to A.C.A. 1939). This section provides:

" * * * In all cases coming before the commission in which attorneys have been employed by the claimant and *have rendered services reasonably necessary to the processing of the claim, the commission shall, upon application of the attorney or the claimant, fix a reasonable attorneys' fee* to be paid to the attorney for such services and shall provide for the payment thereof out of the award, in installments or otherwise, as the commission shall determine to be proper in the light of the award made, and shall further provide for the payment of such attorneys' fee direct to the attorney and shall charge the amount of such payment or payments against the award made to the claimant." (Emphasis supplied.)

This salutary enactment enables the injured workman to obtain such legal services as may be "reasonably necessary to the processing of [his] claim," and provides compensation for the attorney to be deducted from the award made to petitioner. Under its provisions the Commission, upon application therefor, is *required* to fix a *reasonable fee* for services *"reasonably necessary"* and provide for payment of same to the attorney if he has performed such legal services, although the act does not specify when this fee is to be determined. The Commission, therefore, under its quasi-judicial powers must take such action as will comply with the provisions of this statute.

The Commission states in its brief that it has been its practice since enactment of this law to fix the required fee by a "supplemental order" when the award has become final or upon determination of any appeal that might be prosecuted. Petitioner challenges its legal right to do this. In the instant case a motion to fix attorney's fee was filed December 6, 1954. The final award was not entered until two months thereafter, but no provision for an attorney's fee was included therein. The Commission contends determination of an attorney's fee while an appeal is pending is premature, and state they will fix such fee when the appellate proceedings have been completed.

■ This raises some very interesting and important questions which are matters of first impression. Unfortunately on this review, as we see it, we do not have jurisdiction to pass upon them. It is to be noted that as regards attorneys' fees the complaint made is not directed to any *action taken* by the Commission, but *to its inaction,* i. e., failure to fix a fee. Mandamus might lie to force such action but certainly under the circumscribed right of review granted by the legislature we have no right in these certiorari proceedings to require the Commission to take affirmative action.

The statutory provision for appeal is section 56–972, A.C.A.1939, which reads in part:

> " * * * The review shall be limited to determining whether or not the commission *acted without or in excess of its powers;* and, if findings of fact were made, whether or not such findings of fact support the award under review. If necessary the court may review the evidence. * * *" (Emphasis supplied.)

It seems obvious that in the instant case the Commission has not acted "without or in excess of its powers". An interpretation of this attorneys' fee statute must necessarily await a review or appeal when such a matter is properly before us.

We think it unnecessary to discuss petitioner's remaining assignments of error. Suffice it to say that all of these have been carefully considered and found to be without merit. It appears the Commission painstakingly investigated every facet of petitioner's claim and we hold its action was in accord with the law and the evidence.

■ If in the future there is a change for the worse in the physical condition of petitioner's feet, the law gives him the right to petition for a reopening of the matter. Nevitt v. Industrial Commission, 70 Ariz. 172, 217 P.2d 1039.

Award affirmed.

LA PRADE, C. J., and WINDES, PHELPS, and STRUCKMEYER, Jr., JJ., concurring.