429 P.2d 14

**Renato RABAGO, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, City of Tucson, Defendant Employer, Respondents.**

**I CA–IC 125.**

Court of Appeals of Arizona.

June 15, 1967.

Hirsch, Van Slyke & Ollason, by Lawrence Ollason, Tucson, for petitioner.

Robert K. Park, Chief Counsel, by Joyce Volts, Phoenix, for respondent Industrial Commission.

DONOFRIO, Judge.

This case is before the Court on a writ of certiorari, granted upon the petition of the claimant, Renato Rabago, to review the lawfulness of an award and findings of The Industrial Commission of Arizona, issued on October 21, 1966, affirming the Findings and Award for Non Compensable Claim issued January 14, 1966.

The claimant suffered a heart attack during his working hours on July 29, 1965. He was working for the respondent, the City of Tucson, as a sign painter, spray painting signs. He was moving a stack of signs from a pushcart to a high bench when he was stricken. Petitioner on his claim form stated that he picked up sixty ⅛″ x 24″ x 24″ blank steel sign plates to be painted, transferring them three or four at a time to a hand truck, then wheeling the hand truck to a position outside the paint booth, where he again transferred the blanks to a high bench for painting. At the formal hearing he declared that the statement that he picked up only three or four at a time was incorrect; that in fact he had picked up seven or eight at a time, which was more than the usual number. Petitioner testified that each blank sign plate weighed 2¾ pounds. The maximum possible weight petitioner picked up at one time, according to his testimony, was eight plates, or a total of 22 pounds.

Petitioner was examined by the Cardiovascular Board on December 17, 1965. The Board reported:

"It is the opinion of the Cardiovascular Advisory Board that this claimant's myo-

cardial infarction was the result of a natural course of his pre-existing coronary arteriosclerosis."

At the hearing one member of the Board, Dr. Mayer Hyman, was present and testified:

"Q Now, you heard Mr. Rabago testify here today concerning a discrepancy in the amount, in the number of steel plates he lifted.

"A Yes.

"Q And would that change your opinion in any way at all as to whether or not his employment and work could have precipitated this—as I call it, heart attack?

"A I think the highest figure he gave was eight plates weighing about 2½ pounds apiece.

MRS. VOLTS: The maximum amount I figure, two and three-quarters makes it 22 pounds.

THE WITNESS: Certainly I don't think that is an excessive amount of lifting for a man who was engaged in that activity.

"Q (By Mr. Ollason) Would it be an excessive amount of lifting for this man?

"A At the present time or when?

"Q Then.

"A No, I don't think so.

"Q How about at the present time?

"A At the present time I would say he could do that as well. Usually patients who have had a good recovery from a heart attack can do as much lifting as fifty pounds of lifting.

"Q Knowing what you do know about Mr. Rabago at the present time, would you advise him to lift up to fifty pounds?

"A I think I would.

MR. OLLASON: I have nothing further.

* * * * * *

"Q And do you recall at that time what you were told as to what he had been doing?

"A No, I don't, but I can say that I think the board is very conscious in trying to elicit the amount of work that the patient is doing at the time the accident occurs, because we realize that the patient has to be given the benefit of the doubt, and we always lean backwards and try to determine if the activity at the time of the accident was excessive.

"Q The only variation that I can see in the entire record, Mr. Rabago testified today that he did lift a greater amount of plates.

Am I to understand, you correct me, that you do not feel that this would change your opinion had you known it was 22 pounds rather than only possibly 11?

"A I am sure it wouldn't.

MRS. VOLTS: No further questions."

The question before this Court is whether the evidence reasonably supports the award and findings of the Commission.

 We discussed the necessity of proof of a causal relationship between a petitioner's employment and his accidental injury in Thiel v. Industrial Commission, 1 Ariz.App. 445, 404 P.2d 711 (1965), where we said:

"'In order to establish a compensable claim petitioner must sustain the burden of proving a recognizable causal connection between the employment and the accidental injury, or more specifically in a case such as this, he must sustain the burden of proving that the exertion of his job precipitated the heart attack. See Jones v. Industrial Commission, 81 Ariz. 352, 306 P.2d 277. This fact must be the only possible inference drawable from the evidence in order for us to set aside the award denying compensation.' Hud-

gens v. Industrial Commission, 83 Ariz. 383 at 384, 321 P.2d 1039 at 1040 (1958)."

In the instant case, the only medical evidence presented at the hearing was that of Dr. Hyman. He vigorously supported the opinion of the Cardiovascular Board that there was no causal relationship between the employment and petitioner's injury, which the Board attributed to the natural course of petitioner's pre-existing coronary arteriosclerosis.

■ Petitioner argues that where a heart attack occurs while a person is at work in the usual and ordinary course of his employment, the attack should be classified an accident within the meaning of the Workmen's Compensation Act. This question was before this Court in Roberts v. Industrial Commission, 1 Ariz.App. 449, 404 P.2d 715 (1965). We will not repeat the discussion of cases and authorities set forth therein, beginning at page 451. We believe that it is sufficient to state our impression that the evidence in this case sufficiently parallels that of the evidence in the Roberts case to warrant the same holding, that is:

> "We hold that where the facts indicate, as here that the petitioner, while performing his usual and ordinary duties of work, suffers a myocardial infarction as a result of arteriosclerosis and where, further, the testimony is sufficient to indicate that the man's employment did not contribute to or cause the myocardial infarction or heart attack, that the Industrial Commission's findings denying compensation are reasonably supported by the evidence."

The award is affirmed.

CAMERON, C. J., and STEVENS, J., concur.