432 P.2d 162

Lelon NOBLITT, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona and C. C. Arizona Mines, Respondents.

I CA–IC 138.

Court of Appeals of Arizona.
Oct. 3, 1967.

Rehearing Denied Oct. 27, 1967.
Review Denied Nov. 21, 1967.

1. Whether the determination of petitioner's average monthly wage in a so-called "light work order" was res judicata?

2. Was the finding that the petitioner suffered a 25% loss of function of the right hand reasonably supported by the evidence?

The facts necessary for a determination of this matter are as follows. The petitioner was injured on 2 February 1965, in the course and scope of his employment for respondent C. C. Arizona Mines. Petitioner caught his right hand in the fan of a piece of heavy equipment, sustaining lacerations and fractures of the middle and index fingers. He received medical treatment and was released for light work. The so-called "light work order" reads in part as follows:

"FINDINGS AND ORDER TO RE-
TURN TO WORK
FINDINGS

"1. That the above-named applicant sustained a personal injury by accident arising out of and in the course of his employment on February 2, 1965.

"2. That the average monthly wage at the time of injury was $293.00.

"3. That medical evidence indicates that applicant was released as able to work on August 23, 1965.

ORDER

"IT IS ORDERED that applicant make a sincere, honest and conscientious effort to find and perform work; that if applicant is now working that he continue to do so.

\* \* \* \* \* \*

"IT IS FURTHER ORDERED that any party aggrieved by these Findings and Order may apply for rehearing of the same by filing written application therefor at the Office of this Commission within twenty days from service of said Findings and Order."

Alan P. Bayham and Jerome S. Gutkin, Phoenix, for petitioner.

Robert K. Park, Chief Counsel, by Noel J. R. Levy, Phoenix, for respondents.

CAMERON, Chief Judge.

This is a writ of certiorari to review the lawfulness of the findings and award of the Industrial Commission of Arizona. We are called upon to determine:

On 13 September 1965 his doctor reported that he was totally disabled, and on 17 September 1965 a bone graft was performed

on his right hand. On 15 February 1966 the Commission issued a new light work order similar to the one issued 23 August 1965.

## WAS THE LIGHT WORK ORDER RES JUDICATA?

■ The petitioner was seen by a medical consultation board on 11 August 1965. They reported that it was their impression that the claimant's position was not stationary, and that he was in need of further treatment. They recommended surgery for a bone graft on his finger. They reported that they did not feel that the petitioner could return to his regular duties as an equipment operator at that time. The file contains a memorandum dated 2 September 1965 which states that the attending physician's secretary had advised the Commission by telephone that he was putting the petitioner on light work to determine if he could perform it, and that he had decided to delay surgery until he observed whether the petitioner was able to do the light work. With this background, the Commission issued their findings and order to return to work on 9 September 1965. Five days later on 13 September 1965, the attending physician reported that the petitioner had attempted to return to work, but that the work was too difficult for him, and that the attending physician had scheduled the surgery recommended by the consultation board for 17 September 1965, and he reinstated him on total temporary disability status as of that date.

The average monthly wage was initially set forth in the light work order 8 September 1965 and reaffirmed on 15 February 1966. The award of 17 March 1967 contains this finding:

"1. Applicant's average monthly wage was established by the September 9, 1965, findings and order to return to work which became final without protest and is, therefore, res judicata."

■ The function of the light work order is ably demonstrated by this example of its use. This is an interim order of the Commission. It is not intended to, nor does it have, finality. In the instant case, at the issuance, the petitioner's physical condition had not been determined to be stationary either by his attending physician, or by the board of medical consultants. To the contrary, the consultation board had recommended surgery. The attending physician used this order as a test to determine whether or not the recommended surgery was the proper procedure in petitioner's case or whether it would be possible to continue with more conservative treatment. The petitioner made an attempt to return to work but found that it was impossible for him to perform his duties. When he reported this to the physician, the physician notified the Commission that it would be necessary to perform further surgery. The Commission, the record shows, issued the superseding order on its own motion, and reinstated the petitioner's total temporary disability.

■ Such orders which look to the rehabilitation and restoration to gainful employment of the injured workmen are to be encouraged, and workmen in attempting to abide by these orders and to return to gainful employment should not have the additional burden of petitioning for rehearing or for writs of certiorari while at the same time trying to abide by the Commission's light work orders. In addition to defeating the purpose of the Commission's light work orders, such requirements would lead to piecemeal litigation of matters that could properly and logically be reserved until the time to question the award. Our statute defines "award" as follows:

"1. 'Award' means the finding or decision of the commission of the amount of compensation or benefit due an injured employee or the dependents of a deceased employee."

"7. 'Order' means and includes any rule, regulation, direction, requirement, standard, determination or decision of the commission. * * *"

"9. 'Special order' means and includes an order other than a general order." 23–901 A.R.S.

And our Supreme Court has stated:

"It is very clear from the foregoing sections that the words 'order' and 'award', used in the Workmen's Compensation Law, do not mean the same thing and the former does not include the latter." Murphy v. Industrial Commission, 52 Ariz. 343, 347, 80 P.2d 960, 962 (1938).

There is a great distinction between intermediate procedural orders such as the light work orders in this case, and final disposition of a claim from which the petitioner could seek redress in this Court. The latter is final and res judicata and the former is not. Bailey v. Industrial Commission, 2 Ariz.App. 518, 410 P.2d 140 (1966). The doctrine of res judicata does not extend to interim orders and interlocutory decrees. We hold that the light work order issued in the instant case was not a final judgment or award rendered upon the merits, therefore, the determinations of fact contained in it did not become res judicata.

## PERCENTAGE OF LOSS OF USE OF RIGHT HAND

 The petitioner alleges that the 25% disability of the petitioner's right hand represents only the 25% anatomical loss of use of the hand determined by the medical consultation board, and does not properly evaluate the actual functional disability which petitioner suffers to his right hand. We must determine whether the evidence reasonably supports the award of the Commission. Findings of the Industrial Commission if reasonably supported by competent evidence will not be disturbed on appeal. Faulkner v. Industrial Commission, 4 Ariz.App. 567, 422 P.2d 398 (1967).

Dr. Lofdahl of the medical consultation board, testified at the hearing. He was questioned extensively by petitioner's counsel as to how the board arrived at the 25% loss-of-use figure. He testified in part as follows:

"A Providing he has lost those two fingers and that portion of the hand, he has lost a lot of his hand, yes.

"Q More than 50 percent of his hand, his working hand, isn't that correct.

"A No. The thumb alone is considered 50 percent of the hand.

"Q Well, it isn't as big as the other 50 percent that was left, is it?

"A Yes. Taking these two fingers out, you still have a hand, see; but taking the thumb out, you have nothing to oppose and no way you can grab onto something. But you still can grab like this, you see, and even this is quite functional.

"Q This is what I am talking about. Of course, when we get into Mr. Noblitt's case, we are in sort of a hazy zone, because he has some immobility insofar as his index finger and his middle finger, is that correct?

"A No, not according to us. We measure the amount of motion he has, the amount of function he has, and use that as a determinative of how much functional loss he has of that finger.

"Q Well, now, what is his funtional loss in his index finger, including that portion which you call the metacarpal and also the functional loss in his middle finger including what you call the metacarpal? I don't mean to hog the file.

"A Well, on the 22nd of April we thought he had a permanent partial disability amounting to a 25 percent functional loss of the right hand due to the incident of February 2, 1965."

"Q You feel those two fingers are lost?

"A Well, in giving him 25 percent functional loss of the hand, that would almost take in that.

"Q It would take in complete loss of those two fingers?

"A Almost.

"Q It would be the same as though two fingers from a practical evaluation standpoint are removed from the hand?

"A Oh, no. He still has function of grasp for large objects.

"Q But you didn't give him any credit for that?

"A Well, it isn't quite complete; I don't think that would be completely eliminating the fingers, but for all purposes it is close to it."

"Q It was your opinion at that time that the 25 percent loss of function of the right hand was on the basis of the examination that you performed and did represent the loss of function to the right hand as indicated at that time?

"A Yes."

The governing statute in this case is A.R.S. 23–1044 entitled, "Compensation for partial disability; computation". Part B, subsecs. 12 and 21 are the applicable portions thereof:

B. (12) "For the loss of a major hand, fifty months, or of a minor hand forty months."

B. (21) "For the partial loss of use of a * * * hand * * *,

fifty percent of the average monthly wage during that proportion of the number of months in the foregoing schedule provided for the complete loss of use of such member, * * * which the partial loss of use thereof bears to the total loss of use of such member * * *."

We said in considering the effect of a scheduled disability:

"It is often true that a scheduled disability has a greater percentage effect upon one's capacity to perform the duties incident to a particular way of life than is expressed in the percentage disability of the bodily member involved. * * * In those instances wherein the reduction in earning capacity and the loss incident thereto is greater than the compensation which can be allowed under the scheduled disability formula, the answer lies with the Legislature and not with the courts." Metcalf v. Industrial Commission, 3 Ariz. App. 6, 7, 411 P.2d 179, 180 (1966).

It is the opinion of the Court that the Commission's determination that the petitioner suffers a 25% loss of use of his right hand is reasonably supported by the evidence.

The award is set aside for the reasons given previously.

DONOFRIO and STEVENS, JJ., concur.