449 P.2d 61

Edmund LUGAR, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona and John F. Long Home Builders (Longmark Mobile Homes, a wholly owned Subsidiary of John F. Long Properties, Inc., Respondents.

No. 1 CA–IC 186.

Court of Appeals of Arizona.

Dec. 30, 1968.

Rehearing Denied Feb. 7, 1969.

Review Denied March 18, 1969.

Gorey & Ely, by Stephen S. Gorey, Phoenix, for petitioner.

Robert D. Steckner, Chief Counsel, by Dee-Dee Samet, Phoenix, for respondents.

STEVENS, Judge.

The question before the Court is whether the award and findings of The Industrial Commission issued on 15 November, 1967, affirming the award of 6 February, 1967, finding that the petitioner was entitled to accident benefits until 9 December, 1966, and that he had no disability resulting from the industrial accident of 16 July, 1965, is reasonably supported by the evidence.

The petitioner's attending physician filed a report with The Industrial Commission, which was received 15 February, 1967, which included a diagnosis of "traumatic myositis (R) neck and (R) arm (R) interscapular area", and recommended "reopening case from initial injury of 7–16–65 symptoms have reoccurred". The doctor's cover letter requested that the petitioner be retrained to enable him to do bench electronics or electrical work, stating, "this would eliminate the constant aggravating pain syndrome he has as a result of overhead work."

The doctor's report was followed by a timely protest of the award of 6 February, 1967, and a timely petition for rehearing, which alludes to the report of the attending physician, and alleges that there has been a reoccurrence of symptoms and disability causally related to the original injury, and that applicant is therefore entitled to disability benefits and compensation.

At the request of the Commission the petitioner was seen by psychiatrist, Dr. Wil-

liam B. McGrath, on 11 April, 1967. Dr. McGrath filed a detailed report in which he concluded:

"If he has a neuropsychiatric disorder (miled, chronic anxiety) it seems related, but not etiologically, to the accident in question; and to a greater extent I think it derives from the basic personality of the patient himself."

On 17 April, 1967, Dr. McGrath filed the following report:

"This is a slightly uncertain addendum to our report on Edmond Lugar, dated 4–11–67. I think I observed and forgot to record the fact that he may be developing Dupuytren's contractures in the palms of both hands. This, if so, would perhaps call for a further examination or treatment, on the one hand, or it would tend to give credence to the patient's conviction that he had organic basis for some of his complaints. One might still hope, however, that the patient would return to his regular work if at all possible."

On 11 May, 1967, the petitioner's attending physician submitted a letter to the Commission stating:

"Since his injury of July 16, 1967 (sic), Mr. Lugar has continued to have persistent pain in the posterior occipital and cervical area. This pain has persisted in spite of most forms of physiotherapy, analgesics, muscle relaxants, and injections.

"During the past several months, there has not only been the problem of pain, but also the development of weakness in both arms with associated intermittent dysesthesias in the hands. He also has developed progressive palmar swelling and subcutaneous fibrosis indicative of Dupuytren's contracture.

"Because of the obvious sympathetic changes, this patient is having progressive and increasing disability. He should still be considered totally disabled at the present time. I also recommend that he have neurosurgical re-evaluation as soon as possible."

On 31 May, 1967, Dr. John R. Green, who was a member of the examining board that originally evaluated the petitioner, filed the following report:

"Mr. Lugar came on May 31, 1967 at the request of Dr. Giangobbe for reevaluation. It is obvious that he has persistent stiffness and soreness of the neck and that in addition to the coldness and swelling of the right hand he is developing contractures of the flexor tendons of the right hand and beginning involvement of the left upper extremity in a similar manner. It appears to me, as I have said before and has been confirmed by others, that there is reflex sympathetic dystrophy secondary to the neck injury. There also appears to be new and additional disability. He is still reluctant about any type of stellate ganglion block. This is the only type of therapy that can be of benefit, in my opinion. He is to discuss the matter with Dr. Giangobbe."

A hearing date was set for 7 August, 1967, and subpoenas were issued to Dr. McGrath and Dr. Green. Dr. Green answered stating that he was vacationing the entire month of August, and Dr. McGrath answered that the subpoena, which was dated at the Commission on 1 August, 1967, was insufficient notice time to him, as he had appointments set for that entire day. Neither doctor appeared at the hearing. The only person who appeared and testified was the petitioner. The general import of the petitioner's testimony was that he suffered from physical disability as the result of the accident continuously from the time of the accident through to the date of the hearing. A large portion of the questioning and cross-examination at the hearing dealt with whether or not the petitioner was able to return to work, and what type of work he might be able to do.

It is the position of the Commission that the subject matter of the hearing, and the only issue in the case before the Court is: "Whether there is competent evidence to support the discharge of petitioner from

medical treatment with no permanent disability by the February 6th, 1967 award." The Commission in its brief enlarges upon this posture, and states that the petitioner has presented no evidence that the award in question was incorrect, and that procedurally his remedy should have been to file a petition to reopen for new, additional or previously undiscovered disability as provided for by Rule 64, Rules of The Industrial Commission.

The medical consultation report which was the basis for the award in question, which found that the petitioner suffered no permanent disability as the result of the accident, contained the following comments:

"The subjective complaints are considerable but there are no objective findings to substantiate them. We find no objective abnormalities related to the injury of 7–16–65.

"The condition is essentially stationary and further medical therapy is not indicated.

"It is our considered opinion that this man can work as an electrician if his mental attitude would so allow.

"Patient may now be discharged to regular work without disability."

 A comparison of this report with the subsequent evaluations and reports previously quoted indicates that there ·is no conflict among them. The consultation report on which the award of no disability was based admitted that there were subjective symptoms, but admitted that the doctors at that time could make no objective findings which would give credence to an organic origin of these symptoms. A literal reading of the later reports leads to the conclusion that the organic basis for the symptoms was present at the time of the 9 December, 1966 consultation, but defied the doctors' efforts to diagnose it. It is the holding of this Court, therefore, that the award of 15 November, 1967, is not reasonably supported by the evidence. When the evidence before the Commission is such that the only reasonable interpretation of it is one that leads to a conclusion different from the one reached by the Commission, the Court has no alternative but to set the award aside. Rabago v. Industrial Commission, 5 Ariz.App. 563, 429 P.2d 14 (1967).

We feel compelled to discuss the procedural question raised by the Commission as to whether the petition for rehearing was proper in the instant case, or whether the issues should have been presented to the Commission on a petition to reopen for new, additional or previously undiscovered disability. The Commission in its briefs relies upon Parsons v. Industrial Commission, 98 Ariz. 74, 402 P.2d 20 (1965). In that case the Supreme Court stated:

"This case raises the question of what procedure should be followed where it appears that a claimant is able to return to full employment as of a certain date, but that in fact he is not able to and there is uncontradicted evidence of his inability to work introduced at the rehearing covering the period between the original award and the rehearing. As petitioner points out, the Commission's contention that the proper procedure is to make an application to reopen under A.R.S. § 23–1061, subsec. C is raised for the first time in its brief in this Court. Petitioner fears that the Commission would rely upon A.R.S. § 23–1061, subsec. C reading in pertinent part ' * * * No increase or rearrangement shall be operative for any period prior to application therefor * * *' to deny his claim.

"We have held that the Commission has discretion to relieve an applicant of the consequences of his failure to make a timely filing of his claim for compensation where circumstances warrant relieving claimant from his failure to file claim within the time. Jones v. Industrial Commission, 96 Ariz. 283, 394 P.2d 213. We have repeatedly held that the Workmen's Compensation Act should be liberally

construed for the protection of those coming within its provisions, Arizona Constitution Art. 18, sec. 8, A.R.S.

"The Commission has power to make and interpret rules concerning its own procedures. A.R.S. § 23–922; Mountain States T[el.] & T[el.] Co. v. Industrial Commission, 96 Ariz. 72, 392 P.2d 28. If the Commission prefers to consider the effect of conditions developing after an award is made by application to re-open rather than by petition for rehearing, it has, under proper rules, the power to do so. Having taken that position in this case, the Commission would be estopped to change its position in further proceedings. McManus v. Lindberg, 47 Ariz. 214, 54 P.2d 997.

\* . \* \* \* \* \*

"The position of the Industrial Commission in this case is:

'That if, in fact, petitioner is entitled to additional accident benefits or compensation for any period following May 23, 1961, (the date of the award in question) that upon application therefor, proper consideration would be given therefor by the Commission.'

"In reliance upon this representation the award is affirmed."

It is our observation that the Commission has used the opinion in *Parsons,* supra, to play a game of semantics with the petitioner and his counsel to the disadvantage of the petitioner. This attitude on the part of the Commission has led to a morass of procedural problems which unduly complicate the administrative procedure before the Commission, and flies in the face of Rule No. 5, General Rules of The Industrial Commission of Arizona, which is as follows:

"Forms Supplied:—In order to assist parties in presenting their claims before the Commission *(without the necessity of the expense of employing an attorney)* certain forms have been prepared and will be supplied free of charge. No other forms are either necessary or advisable

for the above purpose." (Emphasis supplied.)

The posture adopted by the Commission puts the petitioner squarely between the horns of this dilemma: Will the Commission adopt the position it held in Spicer v. Industrial Commission, 3 Ariz.App. 7, 411 P. 2d 180 (1966), that the petitioner's medical evidence supporting his petition for reopening shows that the symptoms and disability were related back to the original injury, and that therefore the petitioner should have filed a petition for rehearing addressed to the lawfulness of the award and findings; or, will the Commission find that the petitioner's medical evidence supports a finding of new, additional or previously undiscovered disability, even though, as in the instant case, all the medical evidence substantiates the petitioner's claim that he has suffered from the same symptoms and disability continuously since the date of the accident, and date his compensation and accident benefits only from the date of the filing of the petition to reopen? We do not believe this was the intention of the Supreme Court in the Parsons case. If it had been, the Court would not have been so careful to reiterate the caveat that the workmen's compensation laws are to be given a liberal construction.

Fear of this dilemma has led attorneys to develop ingenious pleadings in order to protect their client against the possible consequences of it. We discuss the effect of this type of pleading in two recent cases, Soto v. City of Tucson, 8 Ariz.App. 199, 445 P.2d 82 (1968), and Asbury v. Ralph N. Parsons Co., 8 Ariz.App. 203, 445 P.2d 86 (1968). In those cases, counsel combined the language of a petition for rehearing with the language of a petition for reopening or readjustment due to new, additional and previously undiscovered disability. We pointed out that this creates a procedural problem which we believe makes these claims unduly difficult and unwieldy for both counsel for the petitioner and for the Commission. In *Soto,* supra, we stated:

"We are in this case being asked to determine part of the case when there still

remains to be decided by the Commission a matter which is not before us and which after action by the Commission might make review by this Court unnecessary. We believe that the better procedure would be to consolidate the two issues and keep the award open pending determination of the petition to reopen."

 The intention of the Legislature, and the long line of case law interpretation by the Court, has been that the interpretation of the Workmen's Compensation law is to be a liberal one. Jones v. Industrial Commission, 1 Ariz.App. 218, 401 P.2d 172 (1965). We believe that the corollary of this is that the procedure should be simplified. The Supreme Court in Allen v. Industrial Commission, 87 Ariz. 56, 347 P.2d 710 (1959) admonished the Commission that proceedings before it are not adversary proceedings and that it is as much the duty of the Commission to encourage and evaluate proper claims fairly as it is to expose and reject improper claims. The intention of the Workmen's Compensation Act was to provide benefits for workmen injured in the course and scope of their employment, and to do so by a relatively informal administrative procedure which would be less cumbersome and time consuming than formal court action. When a hearing is held it should be inclusive of all pertinent data available as of the date of the hearing as we stated in Vidal v. Industrial Commission, 8 Ariz.App. 244, 445 P.2d 446 (1968) and Reed v. Industrial Commission, 8 Ariz.App. 479, 447 P.2d 571 (1968).

In the instant case the evidence warrants a finding that the petitioner had a disability as of the date of the 9 December, 1966 consultation, and that he is entitled to medical benefits and compensation as a result thereof. We see nothing to be gained by the Commission by indulging in picayune procedural tactics designed to frustrate petitioner's claim.

The Award is set aside.

CAMERON, C. J., and DONOFRIO, J., concur.