449 P.2d 622

**Fred W. MOKMA, Petitioner,**

v.

**INDUSTRIAL COMMISSION of Arizona; Frank G. Murphy et al., as members of and constituting the Industrial Commission of Arizona; and Auto Valet Properties, Inc., Respondents.**

No. I CA–IC 221.

Court of Appeals of Arizona.

Jan. 23, 1969.

Chris T. Johnson, Phoenix, for petitioner.

Robert D. Steckner, Chief Counsel, Phoenix, by Spencer K. Johnston, Tucson, for respondent The Industrial Commission.

STEVENS, Judge.

This case is before the Court by writ of certiorari brought by the petitioner to review the lawfulness of an award and findings issued by the Commission on 9 July, 1968, which denied reopening of petitioner's claim, finding that petitioner suffered no new, additional, or previously undiscovered disability as the result of an industrial accident which occurred on 8 August, 1966.

The petitioner was working at Auto Valet Properties, Inc. on the date the accident occurred. Petitioner was running down the car wash when he thought one of the cars was going to crash into another. He was running with his forehead turned toward the rear, and hit the left side of his forehead on a blower. He fell, and was unconscious for several minutes. When he regained consciousness and got to his feet, he had pains in his back and in the left side of his neck. He was seen by a doctor the next day, and was hospitalized for conservative treatment. Diagnostic studies were performed, including an electromyogram and myelogram. He was subsequently released to work and referred to Good Samaritan Hospital on an out-patient basis for heat, massage and traction. At this time he was under the care of Doctors Lofdahl and Helme. The petitioner indicated that he was unable to stay at work,

and subsequently he went to see a chiropractor, and later went to Dr. Hunter, an orthopedic specialist.

On 15 March, 1967, the Commission issued a findings and award for temporary disability only, finding that the petitioner had no permanent disability as the result of the accident. This award was allowed to become final without protest or petition for hearing. On 10 April, 1967, the petitioner filed the petition and application for readjustment or reopening of claim, alleging that he had a new, additional or previously undiscovered disability. This was followed on 12 April, 1967, by a letter from Dr. Willard S. Hunter, M.D., stating that in his opinion the petitioner appeared to have a cervical disc which was symptomatic, which could be proved or disproved by utilization of a discogram. The letter requested an opportunity to review the Commission records. On 16 May, 1967, the Commission received a penciled notation from Dr. Hunter which stated:

"Please see report by Dr. Hoffman, plus discogram report. Mr. Mokma operated 5/3 by Dr. Hoffman and myself as private patient because of severe pain."

Subsequent to the receipt of this penciled notation, complete reports were filed concerning the operation, hospitalization, and subsequent treatment.

A formal hearing was held on 26 September, 1967, at which Dr. Hoffman and the petitioner testified. Dr. Hoffman was strenuously cross-examined by counsel for the Commission in an effort to determine whether the petitioner suffered a "new, additional or previously undiscovered disability." The doctor patiently explained that he was not in a position to express an opinion about this, as he had not seen the claimant on the 15 March, 1967 date, nor had he had access to the Commission files. After repeated and persistent questioning Dr. Hoffman finally stated that in his opinion, based on his examination and findings, the complaints and disabilities would have been present on 15 March, 1967,

if there were no other injuries in the meantime. On direct examination, the doctor testified unequivocally that the condition for which the petitioner was operated on in May, 1967, was related to the industrial episode which he described in the history. The doctor also testified that the petitioner's symptoms were becoming more severe on the date that he examined him in the hospital prior to the operation.

The report of the pathologist who examined the fragments removed from petitioner's spine, appears in the file. A total of 15 grams of fibrocartilage was removed, 5 grams from the area designated C 5–6 and 10 grams from the area designated C 6–7. The pathologist diagnosed a herniated nucleus pulposus. This report is dated 3 May, 1967.

At the end of the formal hearing of 26 September, 1967, there was some question as to whether it would be necessary to cross-examine Dr. Helme. Apparently Dr. Helme was supposed to have been subpoenaed for that hearing, but through inadvertence the subpoena was not sent out by the Commission. The Referee allowed counsel for the Commission, ten days following receipt of transcript of the hearing, to notify the Referee whether or not further hearings would be necessary. On 15 November, counsel for petitioner wrote to the Referee advising him that the transcript had been filed on 29 September, 1967. He stated that counsel for the Commission had not notified him concerning the necessity for another hearing, and requested that this be done or that the case be deemed submitted. On 29 December, 1967, counsel for the petitioner again wrote to the Referee indicating that he had had no response to his 15 November, 1967 letter. Another letter was directed to the Referee on 5 January, 1968, requesting that a decision be reached as soon as possible. Counsel for the Commission had prolonged a time allowance of ten days from the 29th of September, 1967, into a three-month continuance. A letter from Dr. Helme dated 21 December, 1967, stamped "Received" by the Legal

Department at Tucson on 12 January, 1968, stated:

"At your request I have reviewed all of the file and the transcript in the above named patient's case. *I did not find anything to indicate that there had developed any new and additional disability between the time of my last examination* (March 1967) *and April 24, 1967*. (Emphasis Supplied).

"I believe that it is significant, as revealed on pages 11, 12 and 18 of the deposition (sic) that the patient consistently complained, inter alia, of pain radiating over the back of the head to the forehead, especially on the left. The surgery of May 3, 1967 consisted of an excision of the cervical disc between C 5-6 and C 6-7, followed by fusion. Such a procedure would have no effect on the C2 root, presumably the source of the head pain above referred to. On page 27 of the deposition the patient states that 'its perfect'."

A copy of this letter was sent to counsel for the petitioner on 9 February, 1968, allowing him five days to request cross-examination if he so desired. Counsel responded on 19 March, 1968, stating that he did not desire cross-examination of Dr. Helme.

The award and findings complained of contains no reasoning which would help us determine how the Commission arrived at their conclusion that the petitioner suffered no new, additional or previously undiscovered disability. We must turn, therefore, to the referee's report dated 3 April, 1968. The referee quoted selected portions of Dr. Hoffman's testimony at the hearing and stated:

"The foregoing testimony compels two conclusions; one, that this doctor was unable to state whether or not the condition which he observed represented new and additional disability over and above that which was in existence on March 15, 1967 when the findings and award for temporary disability was issued; and two, that the condition which he observed on

April 24, 1967 must have been in existence for at least three months prior thereto."

The referee then advised the Commission that the claim should be denied for two reasons: (a) The petitioner failed to meet the burden of proving new, additional or previously undiscovered disability. (b) The evidence showed that petitioner's disability was in existence as of the date of the award of 15 March, 1967, which closed the case with no permanent disability, and therefore that condition could not be new, additional or previously undiscovered.

■ When the evidence before the Commission is such that the only reasonable interpretation of it is one that leads to a conclusion different from the one reached by the Commission, the Court has no alternative but to set the award aside. Rabago v. Industrial Commission, 5 Ariz.App. 563, 429 P.2d 14 (1967); Lugar v. Industrial Commission, 9 Ariz.App. 44, 449 P.2d 61 (1968). It is the opinion of the Court that the evidence before the Commission was such that the only conclusion which could have reasonably been drawn from it was that the petitioner suffered the new, additional or previously undiscovered disability.

It is true that Dr. Hoffman testified that he could not state whether the petitioner suffered a new, additional or previously undiscovered disability subsequent to 15 March, 1967, for the simple reason that he had not examined petitioner on 15 March, 1967, and the Commission's files had not been made available to him. However, it is not necessary that this particular doctor provide that testimony in order for the petitioner to establish a new disability. The Commission's doctors reported that he had no permanent disability as the result of the industrial accident, and this report forms the basis of the award of 15 March, 1967. We find it incongruous for the Commission to now reason that the petitioner had failed to sustain his burden of proving a new and additional disability simply because his attending physician did not examine him on or prior to the date of the 15 March, 1967

award. What Dr. Hoffman did testify to was that at the time he examined him and treated him in April and May, 1967, he most certainly did have a disability, and that in Dr. Hoffman's opinion that disability was causally related to the industrial accident which he suffered. The Commission has argued strenuously that the 15 March, 1967 award was allowed to become final and is therefore res judicata. The Commission fails to take cognizance of the fact that the award is res judicata as to the Commission, as well as to petitioner, and that the finding of no disability as of 15 March, 1967, based upon the medical evidence before the Commission on that date, is final and closed to questions. The award establishes the petitioner's first step in proving a new, additional or previously undiscovered disability, the Commission having already ruled that he had no disability as of the date of that award. The petitioner then went forward with his new evidence and showed that at a later date, in May 1967, he did have a disability and that it was causally related to his industrial accident. This disability certainly falls within the category of a "previously undiscovered disability."

Dr. Helme's report limits his medical opinion to the time between his last examination of the petitioner and the date, 24 April, 1967. There was, therefore, no conflict in the medical evidence with regard to the period following 24 April, 1967, during which time he was treated by Doctors Hoffman and Hunter.

This case makes an interesting comparison with the case of Lugar v. Industrial Commission, supra, recently decided by this Court. In Lugar, we discussed the dilemma confronting the petitioner in attempting to determine whether it is procedurally in his best interest to attack an award with a petition for rehearing, or to allow the award to become final and move to reopen for new, additional or previously undiscovered disability. In Lugar, the Commission took the position that a motion for rehearing limited the inquiry to the date of the award in question, and that any subsequent symptoms or medical evidence, even though they arose or became available prior to the date of hearing, was not properly a subject of that hearing. The Commission in Lugar urged that the petitioner's remedy was to seek a petition to reopen for new, additional and previously undiscovered disability. The fact situation in Lugar and the instant case are strikingly similar, yet in this case the Commission has "reversed its field" and takes the position that having failed to petition for a rehearing, petitioner is now foreclosed from benefits, the Commission doctors having failed to find a disability on the date of their last examination, and the petitioner's doctor testifying that the condition was one which in his opinion was or could have been present at the date of that examination. As we indicated in Lugar, in Soto v. City of Tucson, 8 Ariz.App. 199, 445 P.2d 82 (1968), and in Asbury v. Ralph M. Parsons Company, 8 Ariz.App. 203, 445 P.2d 86 (1968), we deplore the Commission's indulgence in procedural niceties to the detriment of the petitioners. As we stated in Lugar:

"* * * the intention of the Legislature, and the long line of case law interpretation by the Court has been that the interpretation of the Workmen's Compensation law is to be a liberal one. * * * We believe that the corollary of this is that the procedure should be simplified * * * proceedings before the Industrial Commission are not adversary proceedings, and it is as much the duty of the Commission to encourage and evaluate proper claims fairly as it is to expose and reject improper claims. The intention of the Workmen's Compensation Act was to provide benefits for workmen injured in the course and scope of their employment, and to do so by a relatively informal administrative procedure which would be less cumbersome and time consuming than formal court action."

The award is set aside.

DONOFRIO, C. J., and CAMERON, J., concur.