451 P.2d 886

Noma B. TALLEY, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona and Fisher Contracting Company, Respondents.

No. I CA–IC 224.

Court of Appeals of Arizona.

March 13, 1969.
Rehearing Denied May 5, 1969.
Opinion Vacated June 4, 1969.
See 104 Ariz. 433, 454 P.2d 975.

———◆———

Chris T. Johnson, Phoenix, for petitioner.

Robert K. Park, Chief Counsel, Robert D. Steckner, former Chief Counsel, by Donald L. Cross, Phoenix, for respondent Commission.

John S. Schaper, Phoenix, for respondent employer.

STEVENS, Judge.

The injury in question was sustained by the petitioner on 9 November, 1964. Certain aspects of the Workmen's Compensation Act were extensively amended by Chapter 6 of the Fourth Special Session of the Twenty-Eighth Legislature. Reference to some of these amendments is contained in Ahearn v. Bailey, 104 Ariz. 250, 451 P:2d 30, decided 26 February, 1969. The Act is found beginning on page 998 of the 1968 Session Laws of Arizona. The Act became effective on 1 January, 1969. See § 75 on page 1065. The injury in question having occurred prior to that date the procedures which were applicable prior to 1 January, 1969, govern on consideration of this matter. See § 72 of the Act adding A.R.S. § 23–1270. There are some exceptions to this broad statement on procedure which are not applicable to this opinion.

In connection with this matter it is important to observe that the Fisher Contracting Company, the employer, was a self-rater and was represented by its own counsel.

. Two basic issues are presented to this Court. The first is whether certain Commission action became res judicata. In the event the action was not res judicata the second issue relates to whether the average monthly wage was properly determined.

On the date of his injury, the petitioner was 61 years of age. He was a man of little formal education. He was a highly qualified heavy equipment operator. The petitioner explained his training for this occupation as follows:

. "I came up with the old mules, and when they got out and got to the equipment, I learned to operate it, and I have just gone from there. What I know I learned it the hard way."

For a period of time prior to his employment with the Fisher Contracting Company, the petitioner experienced sporadic employment. There were "a lot of (equipment) operators out of work". There is a reconstruction of his earnings for the period of approximately six months prior to his injury in the file.

On the date of his injury, his wage scale was $41.51 per day or a base pay of $779.02 per month. Work for heavy equipment operators was not seasonal and the job in question was not temporary. One of his fellow employees who was doing the same type of work that the petitioner was engaged in at the time of his injury testified in relation to his earnings on the same job. He was asked how much a month he made during the approximate four months that he worked on the job and he answered:

"Well, I would say it would be right close to $800 a month. * * * I was running a carry-all, a cat and carryall, the same as he was."

On July 1965, the Commission issued a "Findings and Order to Return to Work". One of the findings therein stated that the petitioner's average monthly wage at the time of his injury was $362.56. This document directed the petitioner to "make a sincere, honest and conscientious effort to find and perform work". It also provided "for temporary partial disability equal to

65% of the difference between the average monthly wage as found above and the wages which applicant is able to earn after the date of release for work as above found," namely 10 July, 1965. This document contained a 20-day clause. It does not appear in the file that there is any contention that this document is relied upon in support of the employer's assertion of res judicata as to the average monthly wage. This document is similar to the document which was referred to as a "light work order" in our opinion in Noblitt v. Industrial Commission, 6 Ariz.App. 303, 432 P.2d 162 (1967).

No document was filed by the petitioner or his employer within the 20-day period, or at all, directed to the July 1965 Commission action. The file reflects a continued processing of the claim. On 26 January, 1966, without a formal hearing having been requested or held, the Commission entered its "Findings and Award and Order Pending Determination of Earning Capacity". Finding No. 2 declared that his average monthly wage prior to the injury was $362.56. Finding No. 3 stated that the petitioner's physical condition became stationary on 28 December, 1965 and was stationary as of the time of the entry of the document. Finding No. 6 set forth certain periods of total temporary disability and periods of partial temporary disability. In Finding No. 7 the document recites that the evidence "is insufficient to make an award to determine what effect said applicant's disability has on his earning capacity" and the Commission reserved jurisdiction to make a final award and determination in relation to permanent partial disability. Finding No. 9 set forth a formula for further temporary partial compensation payments based upon an assumed earning capacity of $150 a month. This document likewise contained a 20-day clause and concluded by reserving jurisdiction "to alter, amend or rescind this award upon good cause." No request for a formal hearing was filed in relation to this award. Later in the proceedings, it is urged by the employer and it is now

urged before this Court that Finding No. 2 as to the average monthly wage became res judicata because of the failure of the petitioner or his employer to seek a hearing within the 20-day period.

Even though no formal request for hearing was filed in relation to the 26 January, 1966 award, the Commission conducted a formal hearing on 20 December, 1966, at which the petitioner appeared without counsel and the employer appeared with counsel. On 25 April, 1967, the Commission entered its "Decision upon Hearing and Findings and Award for Unscheduled Permanent Partial Disability". In this action the Commission recited the filing of the claim by the petitioner, and that claim was processed, and that the petitioner's condition had become stationary. The decision further recites, *"this Commission* set the matter for formal hearing to determine whether or not said applicant was suffering loss of earning capacity due to his injury of November 9, 1964." (Emphasis supplied). Finding No. 1 finds that Findings 1 through 6 of 26 January, 1966 action were res judicata and the same were incorporated by reference. It will be remembered that Finding No. 2 so incorporated purported to fix the average monthly wage at $362.56. Finding No. 3(i) determined that petitioner was able to return to full-time work at wages in excess of his average monthly wage at the time of his injury.

The petitioner then employed counsel and a timely request for a hearing was filed. The request urged that the petitioner had sustained a loss of earning capacity and that his average monthly wage was in excess of $600 a month. After some administrative procedures a hearing was held on 26 December, 1967. This was followed by a "Decision upon Hearing and Amended Findings and Award for Unsheduled Permanent Partial Disability," this document having been entered on 26 June, 1968. This document again reaffirmed the 26 January, 1966 average monthly wage as being res judicata and in Finding No. 3 specified that "the findings of applicant's average month-

ly wage to be $362.56 is in all respects lawful and just." Finding No. 4 determined that the petitioner had sustained a 17.26% reduction in earning capacity which entitled him to an award of $34.41 per month. This was based upon a finding that while the petitioner could not return to his usual occupation for full-time employment, he could work part-time and that he could reasonably be expected to earn $300 a month.

In the opinion of the Court, it is highly questionable whether the evidence warrants a finding of $300 earning capacity as a heavy equipment operator. However, we need not express an affirmative opinion in this matter for the reason that we are vacating the award on other grounds and this issue is subject to reexamination by the Commission at the hearing thereafter to be held.

After further administrative processing the Commission entered its decision on 17 July, 1968 reaffirming all prior matters and thereupon the matter was brought to this Court for review.

## RES JUDICATA.

▇▇ In the review of Industrial Commission files the area of res judicata is both simple and complex. There are numerous Supreme Court and Court of Appeals opinions which recite that a particular award had become res judicata. It is difficult to set forth simple, or all-inclusive tests. In our opinion the basic tests in relation to the claim of an injured workman arising out of unscheduled injuries, in a file wherein there is no issue as to the fact of a compensable injury, are that Commission action must show a final determination that (1) the injured workman's physical condition has become stationary and (2) that there will be no award for permanent partial disability or that the percentage physical functional disability is established together with a determination as to the loss of earning capacity. We recognize that there may be instances wherein it is not possible to make the loss

of earning capacity decision within a reasonable period of time after the physical condition has become stationary as in Mickelson v. Industrial Commission, 7 Ariz. App. 182, 437 P.2d 666 (1968). We recognize the power and the duty of the Commission to reserve jurisdiction to reopen and to readjust on a showing of new or previously undiscovered disability or due to a change in the workman's physical condition or his earning capacity.

▇▇ The basic problem is to avoid "piece meal litigation". In our opinion it is contrary to the intent of the law to make successive, partial adjudications which become final before all of the issues in relation to that injury have reached the stage of final adjudication, subject to certain rights to reopen as above recognized. To require an injured workman to seek successive writs of certiorari to test intermediate findings would be burdensome to him, would unduly delay the adjudicating process, and would greatly increase the burden upon the Courts.

In Ellison v. Industrial Commission, 75 Ariz. 374, 257 P.2d 391 (1953) the Supreme Court had under consideration the finality of an award made in 1948 which the injured workman sought to reopen in 1951. On page 376 of 75 Ariz., 257 P.2d 391, the Supreme Court characterized the 1948 award as "unconditional." We interpret this characterization as being descriptive of a finality with all issues as to the ultimate disposition being resolved.

We recognize that it may be urged that Kelsey v. Industrial Commission, 79 Ariz. 191, 286 P.2d 195 (1955) is contrary to this opinion. In *Kelsey* the workman was injured on 18 August, 1952. His average monthly wage was first determined to be $145.80. The date and method of this determination is not recited in the opinion. The Commission then modified this figure to the sum of $397.76. Again we do not find the date or method of this determination. This figure was carried forward to an award dated 20 May, 1953. The award further recited that there was

not a proper basis for then determining the earning capacity of the workman. There was a hearing after the 20 May, 1953 award and the award was affirmed on 18 December 1953. This was followed by a request for a rehearing which request was abandoned. There was also a subsequent award on 6 April, 1954 and a further award, the date of which is not stated in the opinion. Thereafter the matter was brought before the Supreme Court on certiorari. The Supreme Court did not discuss the concept of piece meal litigation and held that the award of 20 May, 1953, which was affirmed on 18 December, 1953, after a hearing was res judicata as to the average monthly wage. In our opinion, *Kelsey* is not controlling on the issue of res judicata under the circumstances of the case now under consideration.

In Bailey v. Industrial Commission, 2 Ariz.App. 518, 410 P.2d 140 (1966), review denied, we upheld the action of The Industrial Commission in vacating a prior declaration to the effect that the failure of the insurance carrier to deny coverage constituted an admission of coverage. Therein we stated at page 520 of 2 Ariz. App., at page 142 of 410 P.2d:

> "It is our opinion that there is a great distinction between an award which is a ruling on the merits, a final disposition of the claim, and an intermediate procedural act. The Industrial Commission is a quasi judicial body. It has the right and privilege on its own motion to vacate a preliminary procedural action so long as no rights are prejudiced thereby. None were here prejudiced. Bailey retained all of his rights and privileges in relation to establishing his claim to compensation."

In Martin v. Industrial Commission, 4 Ariz.App. 547, 422 P.2d 178 (1967), we had under consideration the finality and the binding effect of a contested audit fixing wages. There was a right to demand a rehearing and there was a right to appeal to the Superior Court from the order which was entered deciding the wage

issue. These procedural steps were not taken. We held that the order in question was a final order as to all of the issues raised by the audit.

In Bandy v. Industrial Commission, 4 Ariz.App. 551, 422 P.2d 182 (1967) we recited the contentions of The Industrial Commission to the effect that the 19 May, 1964 "record of the Commission's action" purporting to fix an average monthly wage was res judicata in relation to the 30 December, 1965 award. While the opinion affirmed the award, we did not pass upon the validity of the Commission's contention.

In Noblitt v. Industrial Commission, 6 Ariz.App. 303, 432 P.2d 162 (1967), review denied, we had a "light work order" under consideration. This order was of similar import to the July 1965 action in the case now under consideration. After our decision in *Noblitt,* the Commission appears to have discarded "light work orders" and to have changed to documents of similar import which were entitled "awards". In our opinion our reasoning in *Noblitt* remains appropriate. We stated on page 306 of 6 Ariz.App., on page 165 of 432 P.2d:

> "There is a great distinction between intermediate procedural orders such as the light work orders in this case, and final disposition of a claim from which the petitioner could seek redress in this Court. The latter is final and res judicata and the former is not. Bailey v. Industrial Commission, 2 Ariz.App. 518, 410 P.2d 140 (1966). The doctrine of res judicata does not extend to interim orders and interlocutory decrees. We hold that the light work order issued in the instant case was not a final judgment or award rendered upon the merits, therefore, the determinations of fact contained in it did not become res judicata."

In Mokma v. Industrial Commission, 9 Ariz.App. 88, 449 P.2d 622 (1969), we stated, "we deplore the Commission's indulgence in procedural niceties to the

detriment of the petitioners." We further quoted from the case of Lugar v. Industrial Commission, 9 Ariz.App. 44, 449 P.2d 61 (1968) as follows:

" * * * the intention of the Legislature, and the long line of case law interpretation by the Court has been that the interpretation of the Workmen's Compensation law is to be a liberal one. * * * We believe that the corollary of this is that the procedure should be simplified * *. * proceedings before [the Industrial Commission] are not adversary proceedings, and it is as much the duty of. the Commission to encourage and evaluate proper claims fairly as it is to expose and reject improper claims. The intention of the Workmen's Compensation Act was to provide benefits for workmen injured in the course and scope of their employment, and to do so by a relatively informal administrative procedure which would be less cumbersome and time consuming than formal court action."

In *Lugar* we urged that the Commission recede from rather than encourage the "morass of procedural problems which unduly complicate the administrative procedure before the Commission."

■ In the case now under consideration, we hold that the "awards" of 26 January, 1966 and 25 April, 1967 were not res judicata as to the petitioner's average monthly wage in that it was not until the hearing of 26 December, 1967, which resulted in the award of 26 June, 1968, that the record discloses both a stationary physical condition and an award of loss of earning capacity.

## AVERAGE MONTHLY WAGES

Having reached the above decision that the average monthly wage of $362.56 was not res judicata we turn to the sufficiency of the evidence to establish this wage.

A.R.S. § 23–1041, subsec. B is the Code section which we must apply. This section states in part:

"B. If the injured * * * employee has not been continuously employed for the period of thirty days immediately preceding the injury * * *, the average monthly wage shall be such amount as, having regard to the previous wage of the injured employee or *of other employees of the same* or most similar class working in the same *or most similar employment* in the same or neighboring locality, *reasonably represents the monthly earning capacity* of the injured employee in the employment in which he is working at the time of the accident.

(Emphasis Added).

This section was applied in Steward v. Industrial Commission, 69 Ariz. 159, 211 P.2d 217 (1949). As heretofore stated, the Supreme Court in *Kelsey* recited that the preliminary wage determination of $145.80 was increased by the Commission to $397.-76. In discussing this increase the Supreme Court stated in Kelsey (79 Ariz. at page 194, 286 P.2d at page 196):

"the Commission, following the method approved in the case of Steward v. Industrial Comm., 69 Ariz. 159, 211 P.2d 217, used the average wage pattern of three other carpenters employed by this employer—as is provided for by section 56–952, A.C.A.1939—to determine that petitioner's average monthly wage was $397.76."

*Steward* was also discussed in the recent Arizona Supreme Court case of Powell v. Industrial Commission, 104 Ariz. 257, 451 P.2d 37, decided 27 February, 1969.

■ We hold that the evidence discloses that the petitioner's employment was not seasonal and that his lack of steady employment was due to the fact that many heavy equipment operators were out of work. The evidence disclosed that this employment situation was unusual although the record does not fully develop the reasons for this particular situation. We hold that the evidence does not reasonably support the low figure which the Commission held to be the petitioner's

average monthly wage. As we stated earlier in this opinion, the matter of his post-injury earning capacity and the amount of the award are open for further consideration upon the readjudication of this claim by the Commission. The award of 26 January, 1966 and the subsequent awards are set aside.

DONOFRIO, C. J., and CAMERON, J., concur.