537 P.2d 34

**HARBOR INSURANCE COMPANY, a corporation, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Raymond Adair, Respondent Employee.**

**No. I CA–IC 1180.**

Court of Appeals of Arizona,
Division 1,
Department C.

June 24, 1975.

John S. Schaper, Phoenix, for petitioner.

Greg L. Folger, Chief Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

Charles M. Wilmer, Phoenix, for respondent employee.

*OPINION*

NELSON, Presiding Judge.

The critical question presented for review is whether a workmen's compensation insurance carrier has the right to suspend or terminate payment of permanent partial disability benefits to a claimant when the claimant seeks and receives total temporary disability benefits from another workmen's compensation carrier as the result of a subsequent industrial injury. We hold that a workmen's compensation insurance carrier is not vested with that authority and we therefore affirm the award of the Industrial Commission.

Raymond Adair sustained an industrial injury to his back in the course of his employment as a salesman for Ray Korte Chevrolet (Korte) on August 13, 1971. Petitioner, Harbor Insurance Company (Harbor), as the employer's workmen's compensation insurance carrier, accepted Adair's claim for compensation and medi-

cal benefits on September 23, 1971. A laminectomy was performed on Adair's back and he underwent extended post-operative treatment. Proceedings relative to the August, 1971 injury ultimately culminated in a Decision Upon Hearing and Findings and Award for Permanent Partial Unscheduled Disability issued on November 21, 1973, wherein the Industrial Commission found a 46.1% reduction in Adair's earning capacity entitling him to permanent partial disability payments in the monthly amount of $236.33. Harbor did not protest that decision and the award became final.

At the hearing which preceded the Commission's November 21, 1973 award of permanent partial disability benefits, evidence was presented which indicated that Adair had, after unsuccessfully attempting to return to automobile sales, found work as a security guard early in 1973. On February 15, 1973, Adair sustained an industrial injury while patrolling a construction site for AVCO Community Developers. Because it was unclear whether this was a new injury, or an exacerbation of the prior injury sustained while employed by Korte, Adair filed both a new claim with CNA Insurance, AVCO's workmen's compensation insurer, and a petition to reopen the Harbor claim.

Subsequent thereto CNA Insurance granted Adair temporary compensation and Harbor denied his petition to reopen. Adair made a timely protest of Harbor's denial of his petition to reopen, but it was apparently not acted on.

Harbor issued a Notice of Claim Status on December 21, 1973, terminating Adair's permanent partial disability payments as of February 15, 1973, on the basis that Adair was concurrently receiving temporary total compensation from CNA Insurance as a result of the industrial injury sustained on February 15, 1973. Although Adair contended that Harbor's termination of his permanent partial disability payments was invalid because Harbor had no authority to make such a determination, Adair never-

theless filed a timely request for a hearing pursuant to A.R.S. § 23-1061J. On March 27, 1974, the Commission issued its award ordering the continuation of Adair's permanent partial disability benefits as accrued from February 15, 1973. Harbor requested review and on May 20, 1974, the decision and award of March 27, 1974 was affirmed. Harbor sought and obtained review in this Court by writ of certiorari.

Harbor predicates its December 21, 1973 termination of Adair's permanent partial disability benefits on the argument that an employee cannot, as the result of two successive injuries, be both totally and partially disabled at the same time, and that when the employee's condition is no longer medically stationary following an injury for which permanent partial disability benefits have been awarded, such benefits are not payable during a period of temporary total disability. Assuming arguendo the validity of the foregoing argument, which assumption necessarily includes the assumption that the second injury is related to the first (it being obvious that one can be partially permanently disabled from one injury and totally temporarily disabled from a subsequent unrelated and different injury), the issue involved herein is whether a carrier may appropriately determine that the successive injuries are in fact related and then unilaterally suspend or terminate payment of permanent partial disability benefits when the employee receives total temporary disability benefits from another carrier.

In his Decision of March 27, 1974, the hearing officer made the following findings relative to the question presented on appeal herein:

"6. That the Industrial Commission was the agency and quasi-judicial body which administratively processed and quasi-judicially determined all claims under the Workmen's Compensation Act prior to January 1, 1969; that pursuant to legislation effective January 1, 1969, *certain* (emphasis supplied) claims processing functions were delegated to insurance

carriers without the necessity of Commission action, *A.R.S.* § 23–1061G, as amended 1968, but claims matters involving primarily 'judgment' or 'discretionary' matters were specifically retained under the exclusive control and jurisdiction of the Industrial Commission, i. e., under the so-called 'suspension' statutes, *A.R.S.* § 23–908E, 23–1026E, 23–1027, 23–1071, and determination of average monthly wage, *A.R.S.* § 23–1061F; that likewise, and as pertinent hereto, the determination of loss of earning capacity and entitlement to permanent compensation benefits therefor (pursuant to *A.R.S.* § 23–1044C) was likewise specifically retained and 'redelegated' to the Industrial Commission, *A.R.S.* § 23–1047A & B, as amended 1968, and *see Germany v. Industrial Commission*, 20 Ariz.App. 576, 514 P.2d 747, subject of course, to formal hearing rights when requested, pursuant to *A.R.S.* § 23–1047C; that it is thus patent the determination of loss of earning capacity, if any, (pursuant to *A.R.S.* § 23–1044C) is a duty exclusively of the Industrial Commission, either 'administratively' or as a result of formal hearing if timely requested; that the subject claim did proceed to such formal hearing, culminating in (now) final and res judicata DECISION UPON HEARING AND FINDINGS AND AWARD FOR PERMANENT PARTIAL UNSCHEDULED DISABILITY issued on November 21, 1973 hereinbefore discussed; that under 'old' law, it is well established the Industrial Commission itself cannot, without some additional 'showing' materially alter and/or ex parte terminate and/or suspend payment of permanent compensation benefits payable pursuant to a prior Industrial Commission final award. *Hamlin v. Industrial Commission*, 77 Ariz. 100, 267 P.2d 736 (1954); *Carr v. Industrial Commission*, 2 Ariz.App. 307, 408 P.2d 411 (1965), nor can an insurance carrier have such 'right' during the pendency of other proceedings; *see, by analogy, Beck*

*v. Hartford Accident and Indemnity Company*, 107 Ariz. 476, 489 P.2d 710 (1971).

"7. That since (as aforesaid) it is solely and exclusively the duty of the Industrial Commission to initially determine loss of earning capacity, and the Industrial Commission cannot even change its own res judicata awards 'ex parte', it is erroneous to argue an insurance carrier can at any time thereafter (i. e., following the issuance of the res judicata Industrial Commission award) have the right to ex parte 'readjust or rearrange' applicant's entitlement to such permanent compensation pursuant to *A.R.S.* § 23–1044F, as amended 1968; that again, historically and 'pre-1969' the Commission initially determined loss of earning capacity, and the amount of permanent compensation benefits due, and it was likewise solely the Commission's duty and perrogative [sic] to rearrange and readjust on appropriate application therefor; *Maness v. Industrial Commission*, 102 Ariz. 557, 434 P.2d 643 (1967); *Adkins v. Industrial Commission*, 95 Ariz. 239, 389 P.2d 118 (1964); that *A.R.S.* § 23–1044F is simply a 'codification' of the prior well-established case law relative to 'grounds' for application and/or consideration of rearrangement or readjustment of permanent compensation by the Industrial Commission; that it is illogical to conclude that the Legislature gave the right and duty to the Industrial Commission to initially determine applicant's entitlement to permanent compensation benefits under *A.R.S.* § 23–1044C by specific delegation in *A.R.S.* § 23–1047, yet delegate to an insurance carrier the right to render null, void and ineffective and superfluous, such determination by ex parte action under *A.R.S.* § 23–1044F; that it is also to be noted the provisions of *A.R.S.* § 23–1044F(1, 2 and 3), as amended 1968, establish that a rearrangement or readjustment of permanent compensation benefits is to be made only upon a

'showing' of entitlement thereto (by either party), and for an insurance carrier to conclude that this 'showing' is one that can be made 'ex parte' to itself is erroneous; that the clear meaning of *A.R.S.* § 23–1044F(1, 2 and 3) is that the 'showing' for a rearrangement and/or readjustment of a prior Industrial Commission award involving permanent compensation benefits is a 'showing' which must be made to the Industrial Commission; that it is the Industrial Commission which controls proceedings under the Workmen's Compensation Act, not the insurance carrier; *Travelers Insurance Co. v. Industrial Commission*, 21 Ariz.App. 298, 518 P.2d 1015 (1974)."

On appeal Harbor disagrees with the hearing officer's finding relative to the "processing functions" vested in insurance carriers by A.R.S. § 23–1061 subsections G and F. Subsection G of A.R.S. § 23–1061 provides:

"G. Except as otherwise provided by law, the insurance carrier or self-insuring employer shall process and pay compensation and provide medical, surgical and hospital benefits, without the necessity for the making of an award or determination by the commission."

And subsection F of A.R.S. § 23–1061 provides in pertinent part that:

"F. Each insurance carrier and self-insuring employer shall report to the commission a notice of the first payment of compensation and shall promptly report to the commission and to the employee by mail at his last known address any denial of a claim, any change in the amount of compensation and the termination thereof, except that claims for medical, surgical and hospital benefits which are not denied shall be reported to the commission in the form and manner determined by the commission."

■ Harbor argues that subsections G and F are a clear manifestation of the legislature's intent to vest broad authority in insurance carriers to terminate benefits as

well as to initially process claims. We must disagree. A.R.S. § 23–1061 is couched generally in terms of administratively processing claims and paying compensation; nowhere in that statute are insurance carriers vested with the broad authority to terminate or modify permanent partial disability compensation payments awarded by a quasi-judicial determination of the Industrial Commission.

On the other hand, A.R.S. § 23–1047 and A.R.S. § 23–1044C specifically make the Commission a necessary party for the determination and approval of permanent partial disability compensation. Pursuant to and consistent with the Commission's role of authority in awarding permanent partial disability compensation, A.R.S. § 23–1044F provides that such an award of compensation shall be subject to change in the following events:

"1. Upon a showing of a change in the physical condition of the workman subsequent to such findings and award arising out of the injury resulting in the reduction or increase of his earning capacity, or

2. Upon a showing of a reduction in the earning capacity of the workman arising out of such injury where there is no change in his physical condition, subsequent to the findings and award, or

3. Upon a showing that his earning capacity has increased subsequent to such findings and award."

■ Harbor cites no other authority than the general language of A.R.S. § 23–1061 relative to the administrative processing of claims in support of its contention on appeal. We find it difficult to expand upon the thorough analysis of the hearing officer and we hold that a workmen's compensation carrier does not have the right to suspend or terminate payment of permanent partial disability benefits when a claimant seeks and receives total temporary disability benefits from another workmen's compensation carrier as the result of a subsequent industrial injury.

In conclusion we note that the findings of the hearing officer which purport to set the rights and liabilities of the parties upon any subsequent petition to reopen the Harbor claim on the basis of new, additional, or previously undiscovered disability or condition are premature. The record indicates substantial confusion on whether such considerations were actually presented to the hearing officer for adjudication and their resolution was not necessary for resolution of the question presented on appeal.

The award of the Industrial Commission is affirmed.

STEVENS and WREN, JJ., concur.