552 P.2d 457

**Robert G. GOULD, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Blaser Masonry Corporation, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. I CA–IC 1367.**

Court of Appeals of Arizona, Division 1, Department C.

July 8, 1976.

Hocker & Gilcrease, Ltd. by R. Kelly Hocker, Tempe, for petitioner.

John H. Budd, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by J. Victor Stoffa,[1] Phoenix, for respondent employer and respondent carrier.

1. Mr. Stoffa is currently associated with the law firm of O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, Phoenix,

OPINION

NELSON, Judge.

On May 1, 1968, the petitioner, Robert G. Gould (Gould), was severely injured in a fall while employed as a mason tender by Blaser Masonry Corporation (Blaser), the respondent employer. The claim for workmen's compensation benefits was duly processed and treatment and benefits rendered to Gould by the State Compensation Fund (SCF), the carrier for Blaser. After extensive surgeries on his face and both wrists, and a long period of convalescence and rehabilitation, marked by various and sundry intermediate findings and orders of the Industrial Commission of Arizona (Commission), a final Decision Upon Hearing and Findings and Award for Unscheduled Permanent Partial Disability was entered on June 15, 1971. This award adopted a stipulation by the carrier and Gould that he had sustained a 16.21% loss of earning capacity as a result of his accident.

On July 22, 1971, Gould filed a petition to reopen, indicating that his left wrist was slipping out of joint, causing severe pain and making it difficult, if not impossible, for him to work, the petition to reopen was accepted by the SCF on August 3, 1971. Gould was released for light work on November 1, 1971, but was not discharged. His wrist continued to give him problems and on November 26, 1972 he was returned to a total temporary disability status by the SCF and an additional surgical procedure was performed on Gould's left wrist on November 28, 1972, placing a Swanson ulnar cap over the distal end of Gould's left ulna.

On January 4, 1974, the SCF issued a notice of Permanent Disability and Request for Determination of Benefits pursuant to A.R.S. § 23–1047, together with its notice of claim status terminating temporary compensation and active medical treatment on May 17, 1973. On June 7, 1974, the Commission entered its Findings and Award for Unscheduled Permanent Partial Disability containing a finding that Gould now has no reduced earning capacity as a result of his May 1, 1968 accident. On August 5, 1974, Gould requested a hearing on the June 7, 1974 award, claiming he had at least a 15% loss of earning capacity as a result of the accident. A hearing was held in Phoenix, Arizona on December 30, 1974. As a result of that hearing, the hearing officer issued an award for an unscheduled permanent partial disability, agreeing with the SCF's position that Gould did not now have a loss of earning capacity attributable to the May 1, 1968 accident. After the hearing officer affirmed his decision on review, the matter was brought here on certiorari. We affirm the award of the Industrial Commission of Arizona.

Two issues are presented for decision, one procedural and one evidentiary. Procedurally Gould claims that the award of June 7, 1974, which found no loss of earning capacity as a result of the May 1, 1968 accident was a modification of the award of June 15, 1971, finding a loss of earning capacity of 16.21% without notice, or hearing, or other opportunity to be heard, and therefore was void for a variety of reasons, not the least of which is a denial of due process of law. Gould misconstrues the impact of a successful reopening on the normal processing of a workmen's compensation case.

Our workmen's compensation law generally envisions a possible three stages of wage-type compensation: Temporary Total Disability, Temporary Partial Disability, and Permanent Disability, either total or partial—A.R.S. §§ 23–1041 et seq., particularly §§ 23–1044, 23–1045, 23–1047 and 23–1061; see also *Home Insurance Company v. Industrial Commission,* 23 Ariz.App. 90, 530 P.2d 1123 (1975), and cases cited therein. This case has proceeded through all three stages of the sequence twice. This is neither unusual nor impermissible and is clearly contemplated by the statutes. Both of the awards, by their express language, as well as the statutes in question,

contemplate the continued jurisdiction by the Commission, evoked either on its own motion or that of the injured workman or the insurance carrier, to review and revise the existing award based upon new evidence of a change in either physical condition or fiscal condition. A.R.S. §§ 23–1044F, 23–1047D, 23–1061H & I.

■ Gould misconstrues the procedural step which effected the change in his status from the award of June 15, 1971, finding a 16.21% loss of earning capacity. It was not the Commission's action on June 7, 1974 that changed the prior award; it was Gould's successful petition to reopen in August of 1971 that changed his status back to temporary disability compensation. When the SCF accepted the petition to reopen, Gould was placed on a temporary disability status, sometimes partial, and total during the time of his second surgery on his left wrist in November of 1972. The language of A.R.S. § 23–1061(I) is clear as to how the claim then proceeds:

" . . . The reopened claim shall be processed thereafter in like manner as a new claim."

That is exactly what happened here. Gould went from temporary partial disability to total disability (surgery) to temporary partial disability (released for light work) to permanent partial disability. When the Commission issued its Findings and Award of Partial Permanent Disability on June 7, 1974, finding no loss of earning capacity, this was the first time such a determination had been made in this newly reopened claim. Gould was not satisfied with the Commission's determination and sought a hearing, which was his right. Had he convinced the hearing officer that he indeed was entitled to an award for loss of earning capacity, it would have dated from the stationary date of May 17, 1973, A.R.S. § 23–1047; *Home Insurance Company v. Industrial Commission,* supra. Nothing would have dated back to the award of June 15, 1971, since it had been superseded by the new claim which arose upon the successful reopening under A.R.S. § 23–1061H and I.

This case factually illustrates the wisdom of the statutory scheme. Gould was grievously injured in an industrial accident and was unquestionably entitled to benefits, both temporary and permanent. He received them. He was released as stationary and received a permanent partial disability award. He continued to be plagued by the injury to his left wrist. After consultation with his physician, it was thought that an additional surgical procedure would improve his condition. The carrier agreed and his claim was reopened. The surgery was performed and was successful. In fact, the surgery was so successful that Gould, according to the evidence as viewed by the hearing officer, had no loss of earning capacity at this time.

■ This brings us to the final question presented for review: does the evidence in fact support the hearing officer's decision that Gould suffered no loss of earning capacity as a result of the accident? Viewing the evidence in a light most favorable to upholding the decision of the hearing officer, *Micucci v. Industrial Commission,* 108 Ariz. 194, 494 P.2d 1324 (1972), and resolving all conflicts in the evidence in similar fashion, *Malinski v. Industrial Commission,* 103 Ariz. 213, 439 P.2d 485 (1968), the hearing officer's decision regarding no loss of earning capacity finds ample support.

It is clear that Gould was making more money at the time of the hearing in December of 1974 than he had been in May of 1968. The question then becomes one as to whether this current wage, in a different position or occupation, when adjusted for inflationary factors, truly reflects Gould's loss of earning capacity, in May of 1968. *Altamirano v. Industrial Commission,* 22 Ariz.App. 379, 527 P.2d 1096 (1974); *Arizona Public Service Company v. Industrial Commission,* 16 Ariz.App. 274, 492 P.2d 1212 (1972); *Whyte v. Industrial Commission,* 71 Ariz. 338, 227 P.2d 230 (1951).

The primary basis for the proof of the value of Gould's current wage in 1968 was an employment expert working for the State Compensation Fund. The testimony was to the effect that a comparable job, had it been available in 1968, would have paid from $4.245 per hour to $4.59 per hour. There was testimony offered by Gould that such a job would have paid as low as $2.50 per hour. As a mason tender, in 1968, Gould was earning $4.21 per hour at the time of his accident.

■ Gould urges that the evidence offered by the expert, Mr. Ross Lamoreaux, was conjectural, speculative, based on incomplete and inaccurate information, and was hearsay. In a case involving this very expert, the Court rejected similar arguments. *Germany v. Industrial Commission,* 20 Ariz.App. 576, 514 P.2d 747 (1973). The expert's testimony is clearly opinion evidence and the weight to be accorded it is for the hearing officer.

■ Gould also claims that the evidence shows that his current employer is paying him somewhat out of sympathy and that we should therefore discount the value of the wage with this factor, citing the case of *Allen v. Industrial Commission,* 87 Ariz. 56, 347 P.2d 710 (1959), second appeal, 92 Ariz. 357, 377 P.2d 201 (1962). The hearing officer rejected this contention and so do we. Here we have a new employer and a new job. There is no question of workmen's compensation liability for Gould's old injury, if he cannot work. The accommodations made for Gould by his current employer were not made out of sympathy, but in order to insure the retention of a valuable employee while he was undergoing surgery and convalescing from a previous injury for which they were in no way responsible. The sympathy claim is absolutely without merit.

The award of the Industrial Commission of Arizona is affirmed.

HAIRE, C. J., and EUBANK, P. J., concur.