694 P.2d 1248

**CROWLEY CONSTRUCTION COMPANY, Petitioner Employer,**

**Fidelity & Casualty Company of New York, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Walter Buck, Respondent Employee.**

**No. 1 CA–IC 3108.**

Court of Appeals of Arizona, Division 1, Department C.

Jan. 24, 1985.

Jones, Skelton & Hochuli by Calvin Harris, Phoenix, for petitioners employer and carrier.

Sandra Day, Chief Counsel, Industrial Com'n of Arizona, Phoenix, for respondent.

Machmer, Schlosser & Meitz, Ltd. by Ronald M. Meitz, Phoenix, for respondent employee.

## OPINION

JACOBSON, Chief Judge.

This review of an award of the Industrial Commission requires a determination of the legal effect of the reopening of a prior scheduled injury, which injury formed the basis of an unscheduled award for a second scheduled injury.

The facts are not in dispute. On August 27, 1974, the claimant sustained an industrially related injury to his right knee while employed by Crowley Construction Company which was insured by Fidelity and Casualty Company for Worker's Compensation benefits. This injury was subsequently closed and the claimant received scheduled benefits in the sum of $1,250. On March 24, 1975, the claimant suffered a second unrelated industrial injury to his right wrist while employed by the same employer which was covered by the same carrier. While the wrist injury was scheduled in nature, because it constituted a successive scheduled injury, it was characterized as an unscheduled injury pursuant to *Ronquillo v. Industrial Commission*, 107 Ariz. 542, 490 P.2d 423 (1971), and the claimant was awarded unscheduled permanent partial disability benefits in the sum of $305.45 per month representing his combined loss of earning capacity based upon both the knee injury and the wrist injury.

On March 26, 1982, pursuant to A.R.S. § 23–1061(H), the claimant petitioned to re-open the knee injury award based upon medical evidence of progressive intermittent traumatic degenerative osteoarthritis to his knee. After an initial denial and request for hearing, the petition to reopen was eventually accepted by the carrier. Based upon this acceptance the commission entered an award granting reopening. The claimant was then placed upon a total temporary disability status and the carrier began paying the claimant total temporary disability benefits in the approximate sum of $800.00 per month based upon his total loss of earning capacity and his previously determined average monthly wage.[1]

Upon commencement of the payment of total temporary benefits, the carrier ceased paying the $305.45 per month permanent partial disability benefits awarded for the wrist injury.

The claimant then filed a petition pursuant to A.R.S. § 23–1061(J) seeking reinstatement of the $305.45 per month payment under the wrist award. The matter was presented to the Administrative Law Judge on memorandum as purely a question of law.

The Administrative Law Judge relying primarily upon this court's decision in *Harbor Insurance Company v. Industrial Commission*, 24 Ariz.App. 197, 537 P.2d 34 (1975), held:

> under the facts herein the insurance carrier had no authority to unilaterally cease making payments under the [award for unscheduled permanent partial disability relating to the wrist injury] regardless of whether or not applicant was receiving temporary benefits under a reopened claim for a separate and distinct injury and regardless of the fact that said separate injury served to convert a second scheduled injury to unscheduled which led to the permanent compensation benefits involved herein.

Based upon this legal conclusion, the Administrative Law Judge reinstated payments to the claimant under the unsche-

---

1. The record is unclear whether the average monthly wage was that in existence at the time of the knee injury, August 27, 1974, or at the time of the wrist injury, March 28, 1975.

duled permanent partial disability award, the result being that claimant is now entitled to recover $305.45 in permanent partial disability benefits and $800.00 as temporary total benefits. The carrier and the employer have timely sought review of the Administrative Law Judge's legal conclusion.

The carrier's basic contention on appeal is that the award for unscheduled permanent partial disability only exists as a result of the combination of the prior scheduled knee injury and the subsequent scheduled wrist injury. From this premise it argues that if one of the combined injuries ceases to be in a stationary condition (i.e., the disability is permanent with no possibility of medical improvement, see *Home Insurance Company v. Industrial Commission,* 23 Ariz.App. 90, 530 P.2d 1123 (1975)), then the basis of the permanent partial award also ceases. The claimant relies, as did the administrative law judge, on *Harbor Insurance Company v. Industrial Commission, supra,* that is, that the carrier lacked unilateral authority to change an award for permanent benefits and that the sole statutory method available to effect such a change is rearrangement under A.R.S. § 23–1044(F), of which the carrier did not avail itself. Corollary to the claimant's position is that he received a permanent disability award for the injury to his wrist; that the condition of his wrist is still stationary (permanent), thus reopening of a separate injury which was the subject of a separate award does not change the res judicata effect of the permanent wrist award.

In order to resolve this issue it is necessary to review the legal rationale leading to the case law created formula of a scheduled injury plus a scheduled injury equals an unscheduled injury.

Arizona has adopted a Worker's Compensation system premised on the proposition that injured workers are to receive benefits commensurate with how those injuries effect the worker's earning capacity. To achieve this end, Arizona, like most states, has recognized that certain types of injuries are presumed to have caused a loss of earning capacity. These injuries are listed in A.R.S. § 23–1044(B) and are compensated according to a set schedule (hence the term "scheduled" injuries). However, if the injury is not listed in A.R.S. § 23–1044(B), (hence the injury is "unscheduled") no presumptive loss of earning capacity attaches, and the injury is compensated based on the difference between the worker's average monthly wage prior to the injury and the actual reduced earning capacity resulting from the injury related disability. A.R.S. § 23–1044(C); *Alsbrooks v. Industrial Commission,* 118 Ariz. 480, 578 P.2d 159 (1978).

However, the law recognized at an early date:

> [T]he undoubted fact that the actual loss of earning power occasioned by a *combination* of two or more separately scheduled injuries may be much greater than the amount reached by merely adding together the losses presumed to be caused by each of such injuries considered separately. (emphasis added).

*Ossic v. Verde Central Mines,* 46 Ariz. 176, 188, 49 P.2d 396, 401 (1935).

The Arizona Supreme Court recognized this anomaly by holding that where successive scheduled injuries occur the combined effect of the first and second injuries must be treated as unscheduled in order to accurately reflect the actual loss of earning capacity resulting from the combined injuries. *Ronquillo v. Industrial Commission,* 107 Ariz. 542, 490 P.2d 423 (1971). The rationale was explained in *All Star Coach, Inc. v. Industrial Commission,* 115 Ariz. 335, 337, 565 P.2d 515, 517 (1977):

> The emphasis of our law in this area is that awards for two scheduled injuries would not adequately compensate the worker because *the cumulative effect* was more debilitating than two scheduled awards would cover [citation omitted]. If the requirements are met, a worker is entitled to an unscheduled award which more realistically reflects the *overall* diminution in earning capacity he or she has suffered. (emphasis added.)

The claimant's unscheduled permanent partial disability award for the second wrist injury reflects this rationale. He did not receive an unscheduled award because he suffered an actual loss of earning capacity due to the wrist injury alone, he received this award because the scheduled loss of earning capacity resulting from the knee injury coupled with the scheduled loss of earning capacity resulting from the wrist injury resulted in a combined loss of actual earning capacity which is greater than if each injury had been considered separately. In causation terms, *but for* the knee injury, the wrist injury would not be unscheduled.

Having established the interrelationship of the knee and wrist injuries to the awarding of unscheduled benefits, we now turn to the legal effect of one of those injuries losing its permanent status, that is, changing from a medically stationary condition to a medically unstationary condition.

We previously noted the two statutory methods by which a claimant may receive compensation for his loss of earning capacity, either through a presumptive scheduled loss or through an actual unscheduled loss. Not previously noted, however, is the statutory prerequisite for awarding permanent compensation under either A.R.S. § 23–1044(B) or (C)—the permanency of the condition. The concept of temporary disability as compared to permanent disability was explained in *Home Insurance Company v. Industrial Commission*, 23 Ariz.App. 90, 93, 530 P.2d 1123, 1126 (1975):

> The statutes do not define "temporary" or "permanent" as used in these disability provisions so as to provide a readily ascertainable line of demarcation for the purpose of differentiating between rights flowing from a temporary disability status and rights flowing from a permanent disability status. This statutory void has been filled by decisional law through the development of the "stationary condition" concept. Under this concept when an injured workman's condition becomes stationary, his entitlement to temporary disability benefits terminate and his entitlement, if any, to permanent disability benefits commences. (Citations omitted.)

■ Conversely, if the claimant's condition becomes medically unstationary, the entitlement to permanent disability terminates and the entitlement to temporary disability benefits commences. *See Gould v. Industrial Commission*, 27 Ariz.App. 170, 552 P.2d 457 (1976).

■ What then, is claimant's condition? As to claimant's unscheduled award, is he now medically stationary or unstationary, permanent or temporary? Just as we do not consider the claimant's successive scheduled injuries in a vacuum, we do not consider the claimant's medical condition in a vacuum. The basis of claimant's unscheduled award is the permanent nature of both his injuries. If one of these injuries loses its character as being stationary (permanent) the underpinnings for the permanent award disappears and his condition from a legal standpoint changes from a permanent condition to a temporary condition. The carrier recognized this by ceasing to pay permanent disability benefits and commencing to pay total temporary benefits.

But, the claimant argues, this the carrier cannot do because it amounts to a unilateral changing of permanent benefits contrary to our holding in *Harbor Insurance Company v. Industrial Commission, supra.* This, however, is not a *Harbor* situation. In *Harbor*, the carrier under an unscheduled permanent partial disability award issued a notice of claim status terminating benefits on the basis that another carrier also operating under a partial permanent disability award affecting the same location had granted a reopening of that award and placed the claimant on temporary disability status. The carrier argued in justifying its action that as a result of two successive injuries a claimant cannot be both totally and partially disabled at the same time. The court framed the issue thusly:

> Assuming arguendo the validity of the foregoing argument, which assumption necessarily includes the assumption that

the second injury is related to the first (it being obvious that one can be partially disabled from one injury and totally temporarily disabled from a subsequent unrelated and different injury), the issue involved herein is whether a carrier may appropriately determine that the successive injuries are in fact related and then unilaterally suspend or terminate payment of permanent partial disability benefits ...

24 Ariz.App. at 198, 537 P.2d at 35.

The *Harbor* court properly held that this the carrier cannot do. Here, however, the carrier has not made a determination that the successive injuries were related; this relationship was established by the award of the commission holding that the scheduled wrist injury was unscheduled because of the existence of the knee injury. The interrelationship of the injuries is res judicata.

Moreover, the carrier did not unilaterally terminate benefit. This termination was the direct consequence of the act of the claimant seeking reopening of one of the injuries that gave rise to the unscheduled award. To place this matter in proper perspective, one would not seriously argue that if the claimant had sought reopening of his wrist injury, (which gave rise to the unscheduled award) the carrier upon acceptance of that reopening would not have been justified in changing the classification of claimant's benefits from permanent to temporary. No different result is legally required here.

We therefore hold that when a scheduled injury, for which scheduled benefits have been awarded, is reopened and that injury is the basis of a *Ronquillo* award for unscheduled benefits, the legal effect of such a reopening is to reopen the entire award and the carrier is justified in making such changes in the compensation paid under that award as the circumstances justify.

Award set aside.

EUBANK, P.J., and OGG, J., concur.