746 P.2d 1310

**JESSIE'S BOAT SHOP & R.V. REPAIR, Petitioner Employer,**

**Home Indemnity Company c/o Home Insurance, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Harold W. Vennes, Respondent Employee.**

**No. 1 CA–IC 3544.**

Court of Appeals of Arizona, Division 1, Department D.

June 2, 1987.

Reconsideration Denied Aug. 25, 1987.

Review Denied Dec. 8, 1987.

Moore, Long & Lester, P.A. by Joseph L. Moore, Phoenix, for petitioner employer and carrier.

Dennis P. Kavanaugh, Chief Counsel, Indus. Com'n, Phoenix, for respondent.

J. Richard Gama, P.C. by J. Richard Gama, Deborah Ham, Phoenix, for respondent employee.

## OPINION

SHELLEY, Judge.

This is a special action review of an Industrial Commission (Commission) award.

On review, petitioners present three issues:

(1) Did the administrative law judge err by permitting Audrey Pidcock to testify at the June 28, 1985 hearing?

(2) Did the claimant sustain his burden of proving that his average monthly wage was $1,000.00?

(3) Did the administrative law judge err by reinstating claimant's temporary benefits effective April 8, 1985?

On November 6, 1982, claimant Harold Vennes was working with his former wife, Audrey (now Audrey Pidcock) at the Martinez Lake Restaurant, where they managed the kitchen. After claimant asked a former employee of the restaurant to leave the premises, a scuffle took place, leaving claimant with a broken tibia and fibula in his left leg. Claimant's injury required surgery for a closed reduction.

On December 3, 1982, claimant filed a worker's report of injury and the claim was denied by petitioner Home Insurance. Claimant requested a hearing on his claim.

On September 8, 1983, a compensability hearing was held before an administrative law judge. The administrative law judge found that claimant's injury arose out of his employment and was therefore compensable. The administrative law judge awarded claimant "medical, surgical and hospital benefits, as indicated, from and

after November 6, 1982 until his condition becomes medically stationary." The award was later affirmed by the administrative law judge after petitioners filed a request for review.

On December 11, 1984, the petitioner insurance carrier issued its "Notices of Claim Status and Permanent Disability Benefits" placing claimant on light work status as of February 15, 1983, and terminating claimant's entitlement to temporary compensation benefits and active medical treatment as of November 28, 1984. The petitioner insurance carrier found claimant had sustained a fifteen percent permanent functional impairment of his left leg and granted permanent partial disability compensation benefits accordingly.

On December 12, 1984, claimant filed objections to petitioner insurance carrier's Notices of Claim Status issued on December 11, 1984 and requested a hearing. He alleged, in addition to other allegations, that claimant's monthly wage exceeded the amount ($541.63) stated by petitioner insurance carrier and that claimant had sustained a permanent impairment of his left leg in excess of fifteen percent.

A series of hearings were held from April 24, 1985, to June 28, 1985, during which the administrative law judge heard conflicting medical testimony. Dr. Rohrer testified that as of April 15, 1985, claimant's condition was stationary. Dr. Aidem testified that claimant's condition could be improved by surgery, and if claimant was willing to go ahead with an operation, his condition was *not* stationary.

The administrative law judge made the following findings relevant for our review:

8. That there is no question the applicant [claimant] was temporarily totally disabled from date of injury on November 6, 1982 through February 15, 1983, ... there is no significant evidence (medical or lay) establishing a basis for removing the applicant from a temporary total disability status prior to December 19, 1983, and he therefore, is entitled to temporary total disability compensation benefits, pursuant to the provisions of *A.R.S.* § 23–1045(A) from November 6, 1982 through December 19, 1983, ...

10. That the applicant remained upon a "light work" temporary partial disability compensation benefits status from December 20, 1983 through November 28, 1984, at which time his condition became medically stationary....

19. [T]he testimony of Dr. Aidem is the more persuasive herein, and it is therefore concluded the applicant has established his entitlement to reinstatement upon a medical (non-stationary) benefit status as of April 8, 1985 (the term reinstatement being applicant herein since a "reopening" is not technically applied as the subject claim has not as yet been finally closed)....

In addition, the administrative law judge made the following award:

1. Temporary total disability compensation benefits pursuant to the provisions of A.R.S. § 23–1045(A) from November 6, 1982 through December 19, 1983, inclusive, and in accordance with the provisions of finding Number 9 hereof.

2. Temporary partial disability compensation benefits for the period of December 20, 1983 through March 19, 1984, inclusive, in the sum of THIRTEEN HUNDRED AND FIFTY–TWO AND 50/100 ($1,352.50) DOLLARS.

3. Permanent partial disability compensation benefits in the sum of FIVE HUNDRED ($500.00) DOLLARS per month for a period of SEVEN AND ONE/HALF (7½) MONTHS commencing November 1984.

4. Further medical, surgical and hospital benefits, as indicated, from and after April 8, 1985, until his condition (again) becomes medically stationary.

5. Further temporary total and/or temporary partial disability compensation benefits, as indicated as provided by law, from and after April 8, 1985 until his condition (again) becomes medically stationary.

AND IT IS ORDERED:

That all compensation benefits to which the applicant has heretofore, or may hereafter, become entitled, shall be

based upon an average monthly wage of ONE THOUSAND ($1,000.00) DOLLARS per month.

Petitioners filed a request for review of the decision and the administrative law judge affirmed the decision and award, stating claimant was not required to establish all the technical requirements of a reopening in order to have his benefits reinstated.

## TESTIMONY OF AUDREY PIDCOCK

■ Petitioners argue that the administrative law judge committed reversible error by permitting Audrey Pidcock to testify. They claim that there had been no request for issuance of a subpoena to her, and by allowing her to testify, the administrative law judge precluded petitioners from effectively cross-examining Ms. Pidcock. We do not agree.

Petitioners should have been prepared to cross-examine Ms. Pidcock. The record contains evidence that Ms. Pidcock was likely to be called as a witness at the June 28, 1985 hearing. On March 29, 1985, claimant requested that the administrative law judge issue a subpoena naming Ms. Pidcock. In claimant's answer to petitioners' interrogatories 3 and 4 dated March 13, 1985, Ms. Pidcock was listed as a possible witness.

The facts in this case are similar to those in *Garcia v. Industrial Commission*, 20 Ariz.App. 243, 511 P.2d 687 (1973). In *Garcia*, the chief surgeon at the employer's hospital testified at a hearing without prior notice to claimant and without being subpoenaed. This court held that there is nothing to prevent a party from presenting witnesses who are willing to appear and testify without being subpoenaed. *Id.* at 246, 511 P.2d at 690.

The instant case involves a witness who *was* subpoenaed, thus providing a more compelling reason for allowing the testimony than in *Garcia*. Petitioners did not request a continuance in order to prepare for the cross-examination of Ms. Pidcock either before or after her testimony. They did not request a continuance after she had testified to procure rebuttal testimony.

Additionally, petitioners extensively cross-examined Ms. Pidcock at the June 28, 1985 hearing. We conclude that petitioners were not denied their right to cross-examine Ms. Pidcock and the administrative law judge was correct in allowing her to testify.

## CLAIMANT'S BURDEN OF PROOF

■ Petitioners argue that claimant failed to sustain his burden of proving that his average monthly wage was $1,000.00, particularly in view of testimony that claimant actually earned only ten percent of the wages paid to him and his wife. We do not agree.

The standard of review for a decision setting forth an average monthly wage was discussed in *United Metro v. Industrial Commission*, 117 Ariz. 47, 49, 570 P.2d 818, 820 (App.1977):

The hearing officer examines all wage records and testimony, thereafter rendering a decision setting the average monthly wage. This decision becomes the final decision of the Industrial Commission. Under the general principles of review as applied to all such final decisions, we will not substitute our judgment on factual issues unless we find an abuse of discretion by the hearing officer. Such an award will not be set aside if it is reasonably supported by the evidence.

At the June 28, 1985, hearing, Ms. Pidcock testified that she understood that she and her husband were each supposed to earn $1,000.00 per month. On September 8, 1983, claimant testified that he understood he was to receive a salary of $1,000.00 per month.

Although Andrea Ybarra testified that claimant was not to be paid and was "just along as a team", both claimant and Ms. Pidcock testified that their initial wage discussions were with Jesse Ybarra and not with his wife, Andrea Ybarra. Mrs. Ybarra testified that she was in San Diego when the claimant and Ms. Pidcock were hired. She further testified that her husband brought the two for her to meet and "he said 'we'll be hiring Audrey and he'll

[claimant] be working with her', and at this point, I said okay." Mr. Ybarra testified that he hired the claimant and Ms. Pidcock.

Additionally, there was testimony that claimant worked long hours at the restaurant. Claimant testified he was working six days a week. Ms. Pidcock testified that claimant worked between 60 and 70 hours a week, and Mr. Ybarra testified that claimant and Ms. Pidcock were *sharing* their work.

We conclude that the record supports the administrative law judge's decision that claimant's monthly wage was $1,000.00 and find no abuse of discretion.

## REINSTATEMENT OF CLAIMANT'S TEMPORARY BENEFITS

Petitioners claim that the administrative law judge committed reversible error by reinstating claimant's temporary benefits. They argue that once permanent benefits have been awarded, the claimant must file a petition to reopen the claim in order to return to the temporary benefit stage. *See* A.R.S. § 23–1061(H). Claimant has not filed a petition to reopen his claim.

■ Claimant argues that by filing his request for rehearing, he insured that the status of his claim and medical condition would not close until the administrative law judge made a final decision. Claimant is correct but it does not resolve the issue before this court.

■ The issue on review is whether the administrative law judge erred when he awarded permanent benefits, thereby closing the claim, and then reinstated temporary benefits in the same award after finding that claimant's condition was no longer stationary. We find no authority that supports the administrative law judge's decision and therefore conclude that the administrative law judge's closure of the claim was erroneous.

Under Arizona worker's compensation scheme, an injured claimant's entitlement to wage compensation is broken down into two categories based on the medical condition of the claimant: (1) that period of temporary disability pursuant to A.R.S.

§§ 23–1044(A) and 23–1045(A); and (2) a subsequent period in which permanent disability might be involved pursuant to §§ 23–1044(B), (C) and 23–1045(B), (C). *Home Insurance Co. v. Industrial Commission*, 23 Ariz.App. 90, 93, 530 P.2d 1123, 1126 (1975).

■ Under this concept, when a claimant's condition becomes stationary, his entitlement to temporary disability benefits terminates and his entitlement, if any, to permanent disability benefits commences. *Id.* A claimant's condition is stationary when it has reached a "relatively stable status so that nothing further in the way of medical treatment is indicated to improve that condition." *Aragon v. Industrial Commission*, 14 Ariz.App. 175, 176, 481 P.2d 545, 546 (1971).

■ If claimant's condition can be improved by surgery as the administrative law judge found, and he is willing to undergo such surgery, his condition is not stationary and he cannot be entitled to permanent benefits. Permanent benefits are reserved for claimants whose injuries have become stationary. *See Crowley Construction Co. v. Industrial Commission*, 143 Ariz. 634, 694 P.2d 1248 (App.1985); *Home Insurance Co. v. Industrial Commission*, 23 Ariz.App. 90, 530 P.2d 1123 (1975). An award of permanent benefits presupposes permanent disablement and is based on the degree of permanent impairment.

In the instant case, the administrative law judge found that Dr. Aidem's testimony that claimant's condition could be improved by surgery was more persuasive than the testimony of Dr. Rohrer that claimant's condition was stationary. However, the administrative law judge awarded permanent benefits for a previous period that commenced when no active treatment was recommended. This award is in error.

Additionally, the administrative law judge had no authority to award permanent benefits for an injury that once appeared to be stationary but was not stationary at the time of hearing. *See Janis v. Industrial Commission*, 27 Ariz.App. 263, 553 P.2d

1248 (1976). In considering the record, it is important to bear in mind that the ultimate issue relates to the physical condition of the claimant up to the time of hearing. *Garcia v. Industrial Commission*, 26 Ariz. App. 313, 314, 548 P.2d 26, 27 (1976).

The administrative law judge's award of permanent partial disability benefits is not consistent with his finding that claimant's condition at the time of hearing was not stationary. Therefore, the award is set aside.

KLEINSCHMIDT, P.J., and BROOKS, J., concur.