752 P.2d 43

Essie AMEY, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Division of Administration, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA-IC 3743.

Court of Appeals of Arizona, Division 1, Department B.

March 24, 1988.

Taylor & Schaar by Don F. Schaar, Phoenix, for petitioner.

Dennis P. Kavanaugh, Chief Counsel, The Indus. Com'n of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund, Phoenix, for respondent Carrier.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Lawrence H. Lieberman, Phoenix, for respondent Employer.

## OPINION

KLEINSCHMIDT, Judge.

This is a special action review of an Industrial Commission award terminating temporary benefits with a permanent physical impairment but without a permanent psychiatric impairment. This award also provided supportive physical and psychiatric care. The sole issue presented for review is whether the administrative law judge abused his discretion by prohibiting psychiatric evidence concerning treatment after the first scheduled hearing. We find an abuse of discretion and accordingly set aside the award.

In May 1974, the claimant injured her lower back at work. Compensability was accepted and temporary benefits were provided until July 1975, when the claim was terminated without permanent impairment. In October 1982, the claimant succeeded in reopening the 1974 injury claim for physical and psychiatric conditions. In December 1983, the reopened claim was first terminated with a permanent physical impairment but without a psychiatric impairment. The claimant protested this termination, and after hearings, she was awarded continuing benefits for a psychiatric condition related to the industrial injury. These benefits continued until September 16, 1986, when the claim was again terminated with a permanent physical impairment but without a psychiatric impairment. The termination notices also provided supportive physical and psychiatric care.

The claimant protested this termination as well, and a hearing was scheduled for February 23, 1987. Pending this hearing, the claimant timely submitted progress reports through April 1986 from the treating psychiatrist, Max Menack, M.D., and also timely requested a subpoena for Dr. Menack. In addition, the respondent carrier (Fund) timely requested a subpoena for consulting psychiatrist Stuart M. Gould, Jr., M.D. Both subpoena requests were granted, and the medical experts were scheduled to appear at the February 1987 hearing.

The claimant and Dr. Gould appeared at the scheduled hearing. Dr. Menack, however, failed to appear because of his scheduling error. Dr. Gould testified that the claimant had a unipolar depression that was currently in remission with anti-depressant medication. This condition did not rate a permanent impairment but did require supportive care. In his opinion, events other than the industrial injury caused the depression, including an intervening mastectomy and failed reconstructive surgery, the death of a daughter and resulting responsibility for two grandchildren, the discovery that the claimant had heart disease, and the incarceration of her husband.

A continued hearing for Dr. Menack's testimony was subsequently scheduled for March 10, 1987. On March 9, 1987, Dr. Menack admitted the claimant to the St. Luke's Hospital pain and stress reduction clinic. At the inception of the continued hearing, the Fund objected to any evidence concerning Dr. Menack's evaluation or treatment of the claimant occurring after the first hearing and asserted that the appropriate procedure for producing this evidence was a petition to reopen. The administrative law judge sustained this objection.

The hearing then proceeded to Dr. Menack's testimony. His 1982 diagnosis of a major depressive disorder, moderately severe anxiety, and chronic pain syndrome was unchanged. He recommended continuing therapy and feared a regression if treatment was terminated. Assuming that the claimant was stationary, he rated a significant permanent impairment. Furthermore, he maintained that the psychiatric condition was directly related to the industrial injury.

On March 11, 1987, the administrative law judge issued the termination award. He accepted Dr. Gould's opinion that the psychiatric condition was stationary without permanent impairment but that it did require supportive care. He, however, concluded that the depression was partially related to the industrial injury. He accordingly awarded supportive psychiatric care consisting of eight visits per year with Dr. Menack and anti-depressant medication. In addition, he found that the claimant had

a permanent physical impairment and was entitled to an assessment of lost earning capacity. After affirmance on administrative review, this special action followed.

■ On review, the claimant asserts that the exclusion of relevant evidence denied her substantial justice. To support this assertion, she relies on general principles governing the Industrial Commission hearing process. The Fund answers by arguing that inclusion of this evidence would have denied it substantial justice or disrupted the hearing process.

There is no determinative authority. The governing statute requires the administrative law judge to apply Industrial Commission procedural rules but otherwise authorizes him to "conduct the hearing in any manner that will achieve substantial justice." A.R.S. § 23–941(F). Many of these procedural rules impose time limits keyed to the first scheduled hearing. *See, e.g.,* Arizona Compilation of Administrative Rules & Regulations (A.C.R.R.) R4–13–141(A) (subpoena request for medical witness must be filed at least 20 days prior to first scheduled hearing); –142(A) (notice of deposition must be filed at least 40 days prior to first scheduled hearing); –155(A) (medical report must be filed at least 25 days prior to first scheduled hearing). On the other hand, other rules are keyed to *any* scheduled hearing. *See, e.g.,* A.C.R.R. R4–13–141(D) (objection to out-of-state medical report must be filed at least 20 days prior to any scheduled hearing); –144(A) (written interrogatories must be filed at least 40 days prior to any scheduled hearing). Moreover, given compliance with the time limits, these procedural rules do not restrict the admission of relevant evidence at the hearing(s). For example, in the present case the claimant timely requested a subpoena for Dr. Menack. The substance of his testimony was not restrict-

ed by the time limits or subpoena requests. Finally, the parties have not cited, and we have not discovered, any case addressing whether a witness appearing at a continued hearing may testify about events occurring after the first scheduled hearing.

This court, however, has considered whether the material issue at hearing concerns the claimant's status when an ex parte benefit determination is made or the claimant's status at the time of hearing. Rejecting the argument that the appropriate remedy is a petition to reopen, we have consistently concluded that the trier-of-fact should consider "all pertinent data available as of the date of the hearing...." *Lugar v. Industrial Comm'n,* 9 Ariz.App. 44, 49, 449 P.2d 61, 66 (1968); [1] *accord, e.g., Jessie's Boat Shop & R.V. Repair v. Industrial Comm'n,* 155 Ariz. 380, 746 P.2d 1310 (App.1987); *see also Cook v. Industrial Comm'n,* 133 Ariz. 310, 651 P.2d 365 (1982) (quoting *Lugar* with approval).

The question, then, is whether this same conclusion should extend to evidence concerning the claimant's status *after* the first scheduled hearing. An affirmative answer maximizes the production of relevant evidence. This result promotes the ultimate goal of resolving compensation claims on the merits rather than on technicalities. *See generally Trull v. Industrial Comm'n,* 21 Ariz.App. 511, 513–14, 520 P.2d 1188, 1190–91 (1974). On the other hand, a negative answer avoids prejudice to the opponent and disruption of the hearing process.

We disagree with the suggestion that there should be an absolute rule excluding all evidence concerning developments of a claimant's condition after the first scheduled hearing. We recognize that, if such evidence is admitted, fundamental fairness will require that the opposing party be given an opportunity to rebut the new evi-

---

**1.** The procedures referred to in *Lugar* may seem confusing. The reader is reminded that, before the 1969 revision, the Industrial Commission directly processed compensation claims. *See generally Evertsen v. Industrial Comm'n,* 117 Ariz. 378, 573 P.2d 69 (App.1977), *approved and adopted,* 117 Ariz. 342, 572 P.2d 804 (1977). Compensation carriers or self-insured employ-

ers now have general authority to process claims. *See generally* A.R.S. § 23–1061(F), (G). The exceptions to this general rule concern average monthly wage and permanent disability, which the Industrial Commission must determine. *See generally* A.R.S. §§ 23–1047(A), –1061(F).

dence. In some cases, a continued hearing will be necessary. But excluding the evidence now and allowing it to be presented at a subsequent hearing on reopening conserves nothing; it merely generates another hearing.

 We also reject the suggestion that all evidence concerning a claimant's condition that develops after the first scheduled hearing must be admitted. The whole question ought to be left to the discretion of the administrative law judge. In exercising that discretion, the relevant considerations are the same as those for determining whether a hearing ought be continued—that is—whether the proponent has exercised due diligence in discovering the evolving condition and developing the evidence relating to it, and whether and to what degree the proffered evidence is relevant and important to the case.[2] The administrative law judge should balance the prejudice that may result from the exclusion of proffered evidence against any prejudice that might ensue from requiring the opposing party to meet it.

While we recognize that the proponent of evidence that is not admitted need not always make an offer of proof, that is a

procedure which we strongly encourage. *See Gordon v. Industrial Comm'n,* 23 Ariz.App. 457, 533 P.2d 1194 (1975). The claimant can be excused from not having made an offer of proof in this case because the issue raised was not directly governed by any procedural rule, there was no decisional law on the topic, and the administrative law judge appeared to believe, categorically, that no inquiry could be made into the claimant's condition that developed subsequent to the date of the first scheduled hearing.

For the foregoing reasons, we conclude that the exclusion of evidence was arbitrary and may have denied the claimant substantial justice. We accordingly set aside the award.

BROOKS, P.J., and EUBANK, J., concur.

---

**2.** Rule R4–13–156, Rules of Procedure for Workmen's Compensation Hearings Before the Industrial Commission of Arizona, provides as follows:

    A. The granting of a continuance of a hearing shall be discretionary with the presiding hearing officer.

    B. If at the conclusion of a hearing held by a hearing officer, any interested party desires a further hearing for the purpose of introducing further evidence, the party shall state specifically and in detail the nature and substance of the evidence desired to be produced, the names and addresses of the witnesses and the reason why the party was unable to produce such evidence and such witnesses at the time of the hearing. If it appears to the presiding hearing officer that with the exercise of due diligence, such evidence or witness could have been produced, or that such evidence or testimony should be cumulative, immaterial or unnecessary, he may deny the request for a continued hearing. He may, on his own motion, continue a hearing and order such further examinations or investigations as, in his discretion, appear warranted.