39 P.3d 1135

Jose P. MEJIA, Petitioner Employee,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Sletten Construction Co., Respondent Employer,

State Compensation Fund, Respondent Insurer.

No. 2 CA–IC 01–0017.

Court of Appeals of Arizona, Division 2, Department B.

Feb. 12, 2002.

Review Denied June 25, 2002.

**32**

Dee–Dee Samet, P.C., By Dee–Dee Samet, Tucson, for Petitioner.

The Industrial Commission of Arizona, By Anita R. Valainis, Phoenix, for Respondent.

State Compensation Fund, By James F. Crane and Bill H. Enriquez, Tucson, for Respondents Employer and Insurer.

*OPINION*

DRUKE, J.

¶ 1 In this statutory special action, petitioner Jose Mejia challenges the administrative law judge's (ALJ) award that A.R.S. § 23–1031 suspended Mejia's right to receive temporary total disability compensation benefits while he was incarcerated. Based on *Aranda v. Industrial Commission,* 198 Ariz. 467, 11 P.3d 1006 (2000), and the record before us, we set aside the award.

¶ 2 We view the evidence in the light most favorable to sustaining the ALJ's award. *Rent A Center v. Industrial Comm'n,* 191 Ariz. 406, 956 P.2d 533 (App.1998). In May 1995, Mejia injured the big toe on his right foot while working for respondent Sletten Construction Company and, due to resulting

1.  Mejia later had to have another toe on the same foot amputated.

2.  The exact date of the revocation does not appear in the record.

complications, had to have the toe amputated.[1] The following May, he was awarded both medical and temporary total disability compensation benefits from the date of injury "until such time as his condition becomes stationary." It appears that none of the parties sought special action review of the award pursuant to A.R.S. § 23–951 and, thus, the award became final. *Standard Brands Paint Co. v. Industrial Comm'n,* 26 Ariz. App. 365, 548 P.2d 1177 (1976). In 1998, while still receiving benefits, Mejia's probation from a 1993 felony conviction was revoked, and he was incarcerated from June 30, 1998, through October 22, 1999.[2] Shortly after he was incarcerated, respondent State Compensation Fund notified Mejia that because of his incarceration, his temporary total disability compensation benefits were temporarily suspended pursuant to § 23–1031.[3]

¶ 3 Mejia filed a notice of protest under A.R.S. § 23–1061(J) and, after a hearing, the ALJ entered an award affirming the suspension. Citing *Aranda,* the ALJ found that Mejia did not have a vested right to the temporary total disability compensation benefits, reasoning that "[a]ny entitlement to such benefits is merely expectant with no right to benefits in future months and contingent on [his] medical status and employment status." The ALJ affirmed the award on administrative review, and Mejia sought special action relief in this court.

¶ 4 Mejia contends the ALJ erred in retroactively applying § 23–1031 to him because he "was on total temporary disability benefits before the enactment of the statute." Because the interpretation and application of a statute presents a question of law, our review is de novo. *Schwarz v. City of Glendale,* 190 Ariz. 508, 950 P.2d 167 (App.1997).

¶ 5 The relevant portion of § 23–1031(A) provides that "beginning on December 1, 1997, payment of compensation under this chapter shall be suspended during the

3.  The Fund did not suspend Mejia's medical benefits during this period.

period of time that [a claimant] has ... [b]een convicted of a crime and is incarcerated in any state, federal, county or city jail or correctional facility." In *Aranda*, our supreme court addressed whether § 23–1031 applied retroactively to two injured workers who had been awarded permanent partial disability benefits and were later incarcerated for crimes they had committed before the statute's effective date. Although the court decided that the statute was substantive, rather than procedural, because it "functions substantively to redefine, regulate, or even eliminate a claimant's legal authorization to receive benefits," 198 Ariz. 467, ¶ 15, 11 P.3d 1006, ¶ 15, the court recognized that even "a substantive legal right may be subject to retroactive impairment before it becomes a vested right." *Id.* at ¶ 16. *See Hall v. A.N.R. Freight Sys., Inc.*, 149 Ariz. 130, 717 P.2d 434 (1986) (substantive right may be impaired before it vests). The court thus had to determine whether the two workers had vested rights, rather than expectant or contingent rights, to their permanent partial disability benefits. To resolve this issue, the court looked to the following definitions for vested, expectant, and contingent rights:

> "Rights are vested ... when the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. They are expectant, when they depend upon the continued existence of the present condition of things until the happening of some future event. They are contingent, when they are only to come into existence on an event or condition which may not happen or be performed until some other event may prevent their vesting."

*Steinfeld v. Nielsen*, 15 Ariz. 424, 465, 139 P. 879, 895 (1913), *quoting Pearsall v. Great N. Ry. Co.*, 161 U.S. 646, 673, 16 S.Ct. 705, 713, 40 L.Ed. 838, 847 (1896). Based on these definitions, the *Aranda* court found that both workers' awards had vested because the awards left "nothing to contingency or to some future event," 198 Ariz. 467, ¶ 21, 11 P.3d 1006, ¶ 21, and thus the workers "pos-

sessed an existing, enforceable right, in property, to receive the monthly compensation payments." *Id.* at ¶ 27. Vesting occurred, said the court, "upon finalization of the award," and the record showed that both awards had become final before the effective date of § 23–1031. *Id.* at ¶ 22.

■ ¶ 6 Here, however, respondents argue that Mejia's award did not vest because, unlike the permanent compensation in *Aranda*, his "temporary compensation is merely an expectation." We disagree.[4] As noted above, an expectant right depends on the continuation of present conditions until some future event happens. *Steinfeld*. For example, a person named as a devisee in a will has only an expectant right in the testator's estate because the testator may modify or revoke the will before his or her death. Thus, any right the person may have in the estate depends on continuing to be named as a devisee until death occurs. *See In re Estate of Finlay*, 430 Mich. 590, 424 N.W.2d 272 (1988) (potential heirs and legatees have mere expectancy interest until testator's death).

■ ¶ 7 On the other hand, a right vests "when every event has occurred which needs to occur to make the implementation of the right a certainty." *Aranda*, 198 Ariz. 467, ¶ 18, 11 P.3d 1006, ¶ 18. That is the case here. Although Mejia initially may have had an expectant right to workers' compensation benefits after his on-the-job injury, once he was awarded temporary total compensation benefits and the award became final, his right to those benefits vested.

> Where every necessary event has occurred making implementation of the right a certainty, then the right to receive a workers' compensation benefit constitutes a substantive vested property right. This means that when final, the award creates an immediate right to present enjoyment of benefits in the current month, as well as future enjoyment in subsequent months. Such rights are neither contingent nor merely expectant.

---

4. Respondents do not argue, nor do we believe, that Mejia had a contingent right to his temporary total compensation benefits. *See In re Dos Cabezas Power Dist.*, 17 Ariz.App. 414, 418, 498 P.2d 488, 492 (1972) (appellant's right to organize as a power district "was not vested but was subject to the contingency of a favorable vote at the polls").

*Aranda*, 198 Ariz. 467, ¶ 20, 11 P.3d 1006, ¶ 20. Moreover, if those benefits are withheld or reduced, "the claimant may exercise an existing, legal right to enforce compliance with the award by direct action against the carrier for payment and, if relevant, bad faith." *Id.* at ¶ 19. Accordingly, we conclude that Mejia had a vested property right in the temporary total compensation benefits awarded to him when the award became final in 1996, which was prior to the effective date of § 23–1031.

¶ 8 Our conclusion is unaffected by the possibility that Mejia's temporary benefits may be terminated if his condition becomes stationary. *See Jessie's Boat Shop & R.V. Repair v. Industrial Comm'n*, 155 Ariz. 380, 746 P.2d 1310 (App.1987) (entitlement to temporary disability benefits terminates when claimant's condition becomes stationary). Vested property rights are no less so merely because they may be altered by future events, as the supreme court recognized in *San Carlos Apache Tribe v. Superior Court*, 193 Ariz. 195, 972 P.2d 179 (1999). There, the court acknowledged that "[t]he Legislature may certainly enact laws that apply to rights vested before the date of the statute" but stated that such laws "may only change the legal consequences of *future* events." *Id.* at ¶ 16. In this regard, Mejia's vested temporary benefits are substantively no different from the vested permanent benefits in *Aranda.* Even though permanent, the workers' benefits were likewise subject to alteration by future events, such as a change in physical condition, *see* A.R.S. § 23–1044(F)(1), or a reduction or increase in earning capacity. *See* § 23–1044(F)(2) and (3).

¶ 9 But in *Aranda*, the court noted that it was "not dealing ... with future events" because both workers had committed their offenses before the effective date of § 23–1031. 198 Ariz. 467, ¶ 28, 11 P.3d 1006, ¶ 28. The court thus held that the statute did not apply to the workers, even though one of them was not incarcerated until after the statute's effective date. The court reasoned:

> [Workers' compensation] claimants must have the opportunity to avert the loss of benefits. The last moment this would be possible, in the context of conviction and incarceration, is the date of the criminal offense. That is the last moment that claimants may choose to alter their behavior to avoid the application of section 23–1031.

*Id.* Based on this rationale, we likewise conclude that § 23–1031 does not apply to Mejia. His criminal conviction occurred in 1993, well before the statute's effective date of December 1, 1997, and, like one of the workers in *Aranda*, Mejia's incarceration occurred after that date, following the revocation of his probation in 1998.

¶ 10 Although some might argue that the last moment Mejia could have altered his behavior to avert the loss of benefits would have been the date of the event giving rise to the probation revocation, we find this argument ignores the express language of § 23–1031(A). The statute authorizes the suspension of benefits only when a claimant has been "convicted of a crime and is incarcerated." We believe this language unequivocally links the incarceration to the criminal conviction itself, rather than a future probation violation, and also conforms to the well-established rule that, in revoking probation, a trial court "must impose a sentence because of the original offense." *State v. Rowe*, 116 Ariz. 283, 284, 569 P.2d 225, 226 (1977). *See also State v. Herrera*, 121 Ariz. 12, 588 P.2d 305 (1978) (punishment for revocation of probation is not for probationary breach but for original charge); *State v. Baum*, 182 Ariz. 138, 893 P.2d 1301 (App.1995) (trial court erroneously punished defendant for probation violation, not crime).

¶ 11 For the foregoing reasons, we set aside the award affirming the suspension of Mejia's temporary total disability compensation benefits during his incarceration.

ESPINOSA, C.J. and HOWARD, P.J., concurring.